# Board of Education of the West Haven School District et al. *v.* Anthony Carlo et al., Board of Finance of the Town of West Haven, et al.

Superior Court      New Haven County      File No. 84498

Memorandum filed February 19, 1957.

*Pouzzner & Hadden,* of New Haven, for the plaintiffs.

*John G. Cicala,* of West Haven, for the defendants.

RYAN, J. This is an action in two counts by the board of education of the West Haven school district against the board of finance of the town of West Haven. In the first count the plaintiff board seeks a declaratory judgment determining whether or not the board of finance has the right or power to reduce the appropriation requested by the board of education for educational purposes and, if so, the extent to which it has said right or power. In the second count the plaintiff asks for a declaratory judgment determining whether or not the defendant board of finance may refuse to transfer and transmit to the plaintiff all amounts expended by the plaintiff in the operation of the West Haven school system when said amounts do not exceed the total sum appropriated for the operation of the school system for the current fiscal year.

The defendant board of finance has filed a counterclaim alleging that there is a dispute between the defendant board of finance and the plaintiff board of education concerning the respective powers and functions of each board and that the board of education and its individual members have, by actions and words, threatened to substantially overexpend the appropriation allocated to said board if in fact it has not already overexpended. The defendant prays that an injunction issue restraining the board of education from overexpending its appropriation and from incurring any liability or expense in excess of said appropriation.

### FIRST COUNT OF COMPLAINT

On February 15, 1956, the board of education submitted a proposed budget consisting of detailed estimates of its expenses for the ensuing year. The proposed budget totaled $1,901,348.25 for the fiscal year commencing May 1, 1956, and ending April 30, 1957. This exceeded the sum appropriated for the previous fiscal year by $311,157.28. The defendant board of finance submitted the annual budget of the town to the electors and later at an executive session it adopted a final budget and set the tax rate. The amount appropriated to the plaintiff board of education was $1,708,486.32. Subsequently, this amount was increased by the additional sum of $20,000, making a total appropriation of $1,728,486.32. This exceeds the appropriation for the previous year by $138,295.35. On August 9, 1956, the plaintiff board met with the defendant board and requested an additional appropriation with which to operate the school system but the defendant board has made no further appropriation. The plaintiff claims that by reason of the reduction in the amount requested, the school system has been disrupted; there are insufficient funds with which to pay salaries; the amount available for physical operation of the schools, for re-

pairs and maintenance, and for textbooks and supplies is inadequate, and the board of education will be unable to properly operate the schools unless additional sums are appropriated by the board of finance.

The plaintiff offered evidence that the West Haven school system is substandard and has been substandard for a number of years. No evidence was offered by the defendant to rebut this. The plaintiff takes the position that more money is essential if the system is to be improved. The plaintiff in particular requested more money for salaries for principals, specialists, supervisors, teachers, textbooks, instructional supplies, medical department salaries and transportation and claims that these things are necessary in order to make some progress towards improvement. It was plaintiff's desire to standardize the textbooks in the elementary grades. The plaintiff planned, if sufficient money were appropriated, to accomplish this in two years. There is evidence that there is some shortage of textbooks in schools where double sessions are held, as a result of which about 1000 pupils must share one book in one course instead of having a book for each student in each course.

The parties are in dispute on the law. The plaintiff claims that the defendant exceeded its authority in reducing the requested appropriation, and the defendant claims it has the right and the power to do so.

"A town board of education is an agency of the state in charge of education in the town; to that end it is granted broad powers by the legislature; and it is beyond control by the town or any of its officers in the exercise of those powers or in the incurring of expense, to be paid by the town, necessitated thereby, except as limitations are found in statutory

provisions. *Groton & Stonington Traction Co.* v. *Groton,* 115 Conn. 151, 155." *Board of Education* v. *Board of Finance,* 127 Conn. 345, 349.

The applicable sections of the General Statutes are as follows: Section 1480 provides that the board of education in each town shall prepare an itemized estimate of the cost of maintenance of public schools and submit it to the town board of finance two months before the annual meeting at which appropriations are to be made; the money so appropriated shall be expended by and in the discretion of the board of education; the board may transfer any unexpended or uncontracted-for portion of any appropriation for school purposes to any other item of such itemized estimate; and expenditures made by the board of education shall not exceed the appropriation made by the town, with such money as may be received from other sources for school purposes. Section 359d of the 1955 Cumulative Supplement provides for the budget hearing by the board of finance, the preparation and adoption of the town budget and the laying of the tax.

The town of West Haven has certain special acts concerning the boards of finance and education which read as follows: "The board of education of said district shall annually submit to the board of finance of said town, at the time prescribed by the latter board, a detailed estimate of its expense for the ensuing year, not including such expenses as are paid from the proceeds of the yearly tax laid by the district and said board of finance shall annually appropriate such amount as it may deem necessary and may diminish the amount of the budget as submitted by the board of education of said district." 22 Spec. Laws 168, No. 293, § 2 (1935).

"The total amount of appropriations for such year shall not exceed the estimated income of that year

and the board of selectmen, any town officer, the town school committee, any board of commissioners in said town or the head of any department of the town government shall not vote to incur, or incur, any liability or expense, by contract or otherwise, for which said town shall be responsible in excess of the appropriation so made, except as otherwise provided by law or approved by said board of finance." 19 Spec. Laws 22, No. 22 (1923).

The defendant board of finance argues that the cases wherein our Supreme Court has rendered opinions as a result of controversies between boards of education and boards of finance involved interpretation of the General Statutes and that since the 1935 special act, quoted supra, gives to the West Haven board of finance the power to annually appropriate such amount as it may deem necessary and to diminish the amount of the budget as submitted by the board of education, it is obvious that the General Assembly intended to provide West Haven with a system of its own. The defendant claims that by virtue thereof the board of finance is empowered to substitute its discretion in place of that of the board of education in determining the amount necessary to be appropriated annually to the board of education and that in doing so, said board of finance is not governed by the principles and tests outlined by our Supreme Court in the cases on that subject. *Groton & Stonington Traction Co.* v. *Groton,* 115 Conn. 151; *Board of Education* v. *Board of Finance,* 127 Conn. 345; *Fowler* v. *Enfield,* 138 Conn. 521. The gravamen of defendant's claim is that although the 1935 special act contains no repealing clause, since it is a later enactment of the General Assembly, §§ 1480 and 359d and their predecessors are repealed by implication in so far as the town of West Haven is concerned.

"The presumption is that the legislature, in enacting the law, did it in view of existing relevant statutes, and intended it to be read with them, so as to make one consistent body of law. 'The General Assembly is always presumed to know all the existing statutes and the effect that its action or nonaction ... produces.' " *Hartley* v. *Vitiello,* 113 Conn. 74, 82. "Such repeals are not favored, and will not be extended beyond the reason therefor, nor presumed where the old and new statute may well stand together. . . . If both the earlier and the later statute can be reconciled, they must stand and have concurrent operation. . . . The repugnancy between the two statutes must be clear and manifest, to warrant a court in holding that the later repeals the former. . . . A statute is not repealed by a later affirmative one containing no repealing clause, unless there is irreconcilable conflict, or the later statute is clearly intended as a substitute for the earlier." *Walsh* v. *Bridgeport,* 88 Conn. 528, 534.

"Implied repeal of a general law by a subsequent private act is not favored, will not be assumed, and will not be held to take place unless there is such manifest repugnancy between the two that they cannot be reconciled and operate concurrently. . . . If the later act is silent as to repeal it will not be held to abrogate any prior law which can reasonably and justly operate without antagonism to it, and with reference to established systems and policies it is presumed that there is no intention to affect them any further than the plain terms of the later act require." *Arsenal School District* v. *Hartford,* 120 Conn. 348, 363. In *State ex rel. Pape* v. *Dunais,* 120 Conn. 562, the question arose as to whether a later special act concerning the office of general registrars of voters repealed by implication a section of the General Statutes. The court said (p. 566) : "It is a legal presumption that the Legislature in framing

the charter, was well aware of the existing provisions of the statute, and a further presumption that there was no intention to enact conflicting provisions, particularly in relation to the important office of registrar of voters."

The matters covered by the General Statutes on education in chapters 67-71 are at least of equal importance as the office of registrar of voters. The language of the special act does not give the board of finance an unlimited discretion as to the estimate submitted by the board of education and is not repugnant to the General Statutes. The plaintiff board of education is still the agent of the state and not of the town. The 1935 special act has not repealed by implication § 1480 (Rev. 1949) and § 359d and their predecessors. The defendant board of finance has no greater power over the appropriations requested by the plaintiff board of education than is given to boards of finance in other towns by the General Statutes.

The controlling rule of law as stated in *Board of Education* v. *Board of Finance,* 127 Conn. 345, 350, is reiterated in *Fowler* v. *Enfield,* 138 Conn. 521, 531: "[1] Where a town board of education includes in the estimates it submits to a board of finance expenditures for a purpose which is not within statutory provisions imposing a duty upon it nor within one which vests it with a discretion to be independently exercised, the board of finance may, if in its judgment, considering not only the educational purpose to be served but also the financial condition of the town, it finds that the expenditure is not justified, decline to recommend an appropriation for it; [2] where, however, the estimate is for an expenditure for a purpose which the statutes make it the duty of the board of education to effectuate or they vest in the board of education a discretion to be independently exercised as to the carrying out of

some purpose, the town board of finance has not the power to refuse to include any appropriation for it in the budget it submits and can reduce the estimate submitted by the board of education only when that estimate exceeds the amount reasonably necessary for the accomplishment of the purpose, taking into consideration along with the educational needs of the town its financial condition and the other expenditures it must make. The board of finance in such a case must exercise its sound judgment in determining whether or to what extent the estimates of the board of education are larger than the sums reasonably necessary and if it properly exercises its discretion and the budget is approved by the town the board of education has no power to exceed the appropriations made."

The estimates of the plaintiff submitted to the defendant board were so itemized as to indicate clearly whether a proposed expenditure falls within one class or the other. The protest of the defendant that the plaintiff should not only have itemized the estimates but that the duty devolved upon it to label each item in accordance with which of the classes it occupies represents a tortured construction of the language of the court in *Board of Education* v. *Board of Finance, supra.*

No evidence was offered by the defendant, nor has any claim been made, that any of the items listed by the board of education in its estimates submitted to the board of finance were for a purpose which the statutes did not make it the duty of the board of education to effectuate or for a purpose concerning which the board of education was not vested with an independent discretion. There were three items in the estimates for which the defendant board made no appropriation. Two of these totaled $8200, and the plaintiff concedes that they did not fall in class (2). The other involves $260 for "miscellaneous" and is

too small to be concerned with. Assuming, as plaintiff claims, that all of the remaining items fall in class (2), was the defendant board justified in reducing the amount requested in varying degrees as to almost every item? The school system has been substandard for a number of years, and the plaintiff board of education and the superintendent of schools have been making an effort to bring about improvement. The defendant board in its deliberations considered the needs of each department as related to the expanding needs of the town, the past requests and how they were related to the present amount requested, the potential capital expenditures which the town is going to require for construction, and the tax income. The defendant board also considered that there was a junior high school under construction which would require staffing and that other school construction is needed in the near future. The present town hall has been outgrown and at some time in the future must be replaced. Something must be done soon about an incinerator, and the installation of twenty-five miles of sewer lines in the Allingtown section makes it likely that the capacity of the present sewage disposal system must be increased. The department of public works and the police department asked for substantial increases in their appropriations. The defendant board considered the probable increase in the number of pupils in the schools and estimated that it would be somewhat less than that predicted by the plaintiff board. In this it was correct. The salary schedules of West Haven and in other towns were considered. A substantial sum must be spent by the town to put the roads into first-class shape, and a sum for this was requested by the department of public works. This department also requested sums for storm sewers, a sea wall, equipment and personnel. It was not possible to provide funds for all these needs. An effort

was made by the board of finance to allocate the funds in the best possible way to meet the most urgent demands of all of the departments. The defendant board considered the ability of the town to pay and the probable future needs of the town. All of these needs were considered in relation to the estimates submitted by the plaintiff board.

Conflicts between boards of education and boards of finance can only be settled by a judicial determination of the discretion exercised by the latter boards. *Fowler* v. *Enfield,* 138 Conn. 521, 532. Under the circumstances, the court finds that the defendant board in reducing the various items estimated by the plaintiff was justified in concluding that they exceeded the amount reasonably necessary for the accomplishment of the purposes, taking into consideration along with the educational needs of the town its financial condition and the other expenditures it must make. The defendant board exercised sound judgment in determining the extent to which the estimates of the plaintiff board were larger than the sums reasonably necessary. Obviously, the substandard condition of the schools which has existed for a number of years cannot be corrected in a short period of time. It is true that progress must be made, but it is not unreasonable to spread it over a period of years.

"[I]t is probably true that in many instances a board of finance does not have as sound an understanding of the educational needs of a town as does its board of education and that therefore a decision by the former to reduce an estimate submitted by the latter may not in fact conduce to the best educational interests of the people of the town; but, on the other hand, it is more than possible that a board of education, less familiar with the finances of the town or perhaps with financial matters in general, if left without a check, might incur expenditures which are

not reasonably necessary to serve those interests and the expenses of which the town could ill afford to meet. One purpose of the legislature in establishing town boards of finance is, as we pointed out in [*Groton & Stonington Traction Co.* v. *Groton,* 115 Conn. 151, 158] to afford a check against the incurring of such expenses on the part of the town. It is also true that where a board of finance reduces an estimate of a board of education so that the sum appropriated is less than is reasonably necessary to carry out the purpose to be served or where it takes such action not in the exercise of a sound judgment but from improper motives or without sufficient understanding, there would seem to be no adequate remedy which the board of education might effectively invoke. The legislature, however, evidently deemed it necessary in the interests of sound municipal finance to give to town boards of finance the powers we have outlined. If such boards do not exercise their judgment intelligently, fairly and disinterestedly, the situation is one, unfortunately not unknown, wherein a public official fails properly to perform the duties of his office, and the remedy is that inherent in the theory of representative government, to replace him by another. If the result brought about by the statutes, which are evidently designed to produce a nice balancing of powers between the two boards do not serve the public interests, the recourse is not, where no justiciable rights are involved, to seek to make the courts arbiters in a controversy essentially political, but to ask the legislature to change or better define the respective powers of the boards." *Board of Education* v. *Board of Finance,* 127 Conn. 345, 352.

In the 1955 session of the General Assembly, house bill 1444, "An Act concerning Appropriations to Boards of Education," sought to amend § 271c of the 1953 Cumulative Supplement, now § 359d of the 1955

Cumulative Supplement, by providing "that the appropriation to the board of education may exceed the estimates recommended by the board of finance in an amount not to exceed the amount estimated by the board of education provided two-thirds of those present as such annual town meeting vote in favor of such action." The bill was reported unfavorably and was rejected by the house of representatives on April 27, 1955. Conn. H. Jour., 1955 Sess., p. 781. This indicates quite clearly that the General Assembly had no intention of changing the statutes concerning the respective powers of the two boards.

### SECOND COUNT OF COMPLAINT

Since May 1, 1956, the plaintiff board has submitted vouchers to the defendant board of finance listing expenses for the operation of the West Haven school system. The vouchers were submitted bimonthly and, with the exception of the first one submitted, the defendant board on each occasion refused to transfer and transmit to the plaintiff the amounts requested. The sums transmitted were less than the amounts required by the vouchers and represented an attempt by the board of finance to limit the plaintiff board to one twenty-fourth of the total amount appropriated for the fiscal year. The defendant board maintains that it has the authority to do this. It claims that because of the special acts hereinbefore cited there is a distinction between the situation as it exists in West Haven and that which was reviewed by the Supreme Court in *State ex rel. Board of Education* v. *D'Aulisa,* 133 Conn. 414. At all times there were sufficient funds left in the total amount appropriated by the board of finance to the board of education to cover the vouchers in question. As already indicated, these special acts do not set up in the town of West Haven a system of its own which gives the defendant board of finance any greater control over the board of education than that pos-

sessed by the boards of finance in other towns. The doctrine of the *D'Aulisa* case, supra, is applicable to the present situation. The legislature intended (1) that the plaintiff board of education should have full discretion as to how and when it shall expend, for the maintenance of the public schools during the fiscal year, the money appropriated by the board of finance for this purpose; (2) when such appropriation has been exhausted the plaintiff board shall receive no additional money unless a further appropriation has been made by the board of finance in accordance with law; (3) the board of finance shall not honor any voucher submitted by the board of education for an amount in excess of the unexpended balance of the plaintiff's appropriation for the fiscal year; (4) the defendant board had no right or power to do other than transfer and transmit to the plaintiff the amounts requested in the vouchers since on each occasion there were sufficient funds in the unexpended balance of plaintiff's appropriation.

### DEFENDANT'S COUNTERCLAIM

The defendant board seeks an injunction restraining the plaintiff board from overexpending the appropriation allocated to it for the fiscal year and from voting to incur, or incurring, any liability or expense, by contract or otherwise, in excess of said appropriation. The facts do not support defendant's contention that the plaintiff board has up to the date of trial either overexpended or that it intends to overexpend its budget. The members of the plaintiff board and the officers of the school system are undoubtedly cognizant of the provisions of 19 Spec. Laws 22, No. 22, and §§ 360d and 1480, and the penalty for violation of these statutes contained in § 781.

The application for an injunction is denied.

No costs shall be taxed to any party.