BOARD OF EDUCATION OF THE CITY OF MILFORD *v.*
BOARD OF ALDERMEN OF THE CITY OF MILFORD

SUPERIOR COURT     NEW HAVEN COUNTY     FILE NO. 100064
AT NEW HAVEN

Memorandum filed July 2, 1963

*William Gitlitz,* of Milford, for the plaintiff.

*Richard H. Lynch,* of Milford, for the defendant.

MacDONALD, J. This action, brought by the board of education of Milford, plaintiff, against the board of aldermen of Milford, defendant, as a result of a substantial reduction by defendant in plaintiff's requested budget for the fiscal year July 1, 1962—June 30, 1963, seeks (1) a declaratory judgment determining whether or not the board of aldermen has the right or power to reduce the appropriation requested by the board of education for educational

purposes which it is the duty of the board of education to effectuate with independent discretion as to the carrying out of said educational purposes; (2) if the board of aldermen has such right or power, a declaratory judgment determining the extent of such right or power; and (3) a mandatory injunction requiring the board of aldermen to make an additional appropriation to the extent to which the court determines that the board of aldermen has exceeded its said right or power.

Defendant board of aldermen, by way of counterclaim, has requested a temporary and permanent injunction restraining plaintiff board of education from expending funds appropriated for school maintenance for other purposes, more specifically legal fees incurred in instituting this action.

Under its charter, the city of Milford has a special budgetary procedure, therein outlined, which apparently was followed by all parties concerned with respect to the budget in question, in that the board of education submitted its budget requests to the mayor about mid-December, 1961, after which, and prior to January 1, 1962, the mayor conferred with all department heads of the city on many occasions, to determine the necessity for the requested appropriations—which totaled $13,262,510 (representing a potential tax increase of 12 mills over the prior year). Of this total figure, $4,511,739 was requested by the board of education and $8,750,771 by all other departments of the city. The proposed fiscal budget submitted by the mayor to the board of finance on December 31, 1961, was $10,238,359—an increase of $376,740 (or about 3.8 percent) over the previous operational budget, although it cut over $3,000,000 from the total requested appropriations—$322,080 from that requested by the police department (about one-third);

$200,144 from that requested by the fire department (about one-third); and $300,148 from that requested by the board of education. It should be noted, however, that about $200,000 of the total proposed increase over the prior year of $376,740 was for the board of education. After holding public hearings as required and conferences with all department heads, the board of finance, on March 31, 1962, submitted its proposed fiscal budget to the board of aldermen—including $4,323,398 for the board of education. Another series of public hearings and special budget sessions were held by the board of aldermen, which considered the proposed budget page by page before adopting, on April 30, 1962, a final budget which contained an appropriation for the board of education of $4,222,570. This sum was $289,169 less than the figure requested by the board of education, and this cut was made by reducing the amounts requested in several categories rather than by refusing to appropriate for any purpose in its entirety.

After adoption of the budget as thus reduced, the board of education started to transfer funds from one account to another to restore funds deleted by the final appropriation and then went ahead to incur obligations for the expenditure of the funds at the expense of the accounts from which they had been transferred. In other words, such items as "classroom teachers" account and "guidance counselors" account were restored to substantially the amounts originally requested by the transfer to them of funds from other accounts. By March 22, 1963, the board of education was confronted by accounts that would be deficits by June 30, 1963, and requested a supplemental appropriation of $114,686 —which was reduced by the board of finance to $70,000 and finally by the board of aldermen to $36,000.

Despite protestation to the contrary in plaintiff's brief, this appears to present the classic conflict between the board of education, seeking honestly and assiduously to improve its school system, and the board of finance or board of aldermen, seeking equally honestly and assiduously to cut expenses where it can, department by department, to keep the taxes from skyrocketing. There is no question that Mr. Foran, superintendent of schools, and Mr. Simpson, chairman of the board of education, are conscientious public officials doing all within their power to improve the Milford schools. This was apparent in their testimony before the court. On the other hand, it is equally apparent that Mayor Iovino and Mr. McCarthy, chairman of the board of aldermen, are equally conscientious public officials, determined to cut the expenses of the city government as much as possible by studying, balancing and cutting, where necessary, the requested appropriations of the various administrative departments in the light of the overall picture of the city's total needs and finances.

It is quite clear under § 3 of article 6 of the Milford charter that the board of aldermen is the final authority on the budget, with power to "reduce or delete any item therein by a majority of members present and voting." It is the appropriating authority under the charter. It is also quite clear that under § 10-220 of the General Statutes the board of education is charged with the duty of maintaining "good public elementary and secondary schools and such other educational activities as in . . . [its] judgment will best serve the interests of the town." Each of these boards has independent and essential functions to perform. See *New Haven Taxpayers Research Council, Inc.* v. *DePalma,* 137 Conn. 331, 336. As pointed out in *Bialeck* v. *Hartford,* 135 Conn. 551, 557, it is not true as a broad general

rule that boards of education are not subject to the control of boards of finance. On the other hand, our Supreme Court points out in that case that the true and sufficient rule is stated in *Board of Education of Stamford* v. *Board of Finance*, 127 Conn. 345, 350, where Chief Justice Maltbie summarized it as follows:

"Where a town board of education includes in the estimates it submits to a board of finance expenditures for a purpose which is not within statutory provisions imposing a duty upon it nor within one which vests it with a discretion to be independently exercised, the board of finance may, if in its judgment, considering not only the educational purpose to be served but also the financial condition of the town, it finds that the expenditure is not justified, decline to recommend an appropriation for it; where, however, the estimate is for an expenditure for a purpose which the statutes make it the duty of the board of education to effectuate or they vest in the board of education a discretion to be independently exercised as to the carrying out of some purpose, the town board of finance has not the power to refuse to include any appropriation for it in the budget it submits and can reduce the estimate submitted by the board of education only when that estimate exceeds the amount reasonably necessary for the accomplishment of the purpose, taking into consideration along with the educational needs of the town its financial condition and the other expenditures it must make. The board of finance in such a case must exercise its sound judgment in determining whether or to what extent the estimates of the board of education are larger than the sums reasonably necessary and if it properly exercises its discretion and the budget is approved by the town the board of education has no power to exceed the appropriations made."

This rule has been reiterated in *State ex rel. Board of Education* v. *D'Aulisa,* 133 Conn. 414, and *Fowler* v. *Enfield,* 138 Conn. 521, and in a carefully considered and comprehensive Superior Court decision in *Board of Education of West Haven* v. *Carlo,* 20 Conn. Sup. 220. As it was further stated in the *Enfield* case, supra, 532: "Each board is given broad, important and far-reaching powers. As is illustrated by the case at bar, questions may well arise as to the precise limits of the powers of each. Boards of education are charged with the duty of providing reasonable educational facilities. Boards of finance are charged with the duty of providing the necessary funds and, at the same time, of seeing to it that expenditures for the educational program are kept within reasonable bounds in view of the over-all financial resources of the town. Until there is a clear legislative directive which more explicitly defines the respective authority of the two boards, the clashes are likely to persist. Under the rule heretofore applied, as quoted from the *Stamford* case, these conflicts can only be settled by a judicial determination testing the discretion exercised." It is these same limitations that are imposed in this case on the power of the board of aldermen to reduce the appropriations requested by the board of education, and the test to be applied is whether or not its discretion was properly exercised in reducing the amount requested.

The answer to the first question propounded in the complaint, then, is that the board of aldermen does have the power to reduce the appropriation requested by the board of education for educational purposes which it is the board of education's duty to effectuate, or in connection with the carrying out of which the board of education has a discretion to be independently exercised, only when that requested appropriation exceeds the amount reason-

ably necessary for the accomplishment of the purpose, taking into consideration, along with the educational needs of the city, its financial condition and the other expenditures it must make.

To answer the second question propounded by the complaint, the board of aldermen possesses the right or power to reduce such request to the extent to which the board of aldermen, in the exercise of its sound judgment, considers such request larger than seems reasonably necessary.

From an examination of the exhibits and a review of the testimony, it seems clear that careful consideration was given, at every step of the way, to the educational needs of the city, its other needs, and its financial condition, and the court cannot find that the board of aldermen abused its discretion or was without reasonable basis for its action with respect to any of the cuts it made in the requested appropriations.

In view of the foregoing conclusions, the answer to the third question is obvious, that no mandatory injunction should issue. Moreover, the issuance of such an injunction would seem doubtful, even if the answers to questions (1) and (2) were otherwise, under *Board of Education of Stamford* v. *Board of Finance,* 127 Conn. 345, 353, where the court gives the really practical answer to the problem as follows: "It is also true that where a board of finance reduces an estimate of a board of education so that the sum appropriated is less than is reasonably necessary to carry out the purpose to be served or where it takes such action not in the exercise of a sound judgment but from improper motives or without sufficient understanding, there would seem to be no adequate remedy which the board of education might effectively invoke. The legislature, however, evidently deemed it necessary in the interests of

sound municipal finance to give to town boards of finance the powers we have outlined. If such boards do not exercise their judgment intelligently, fairly and disinterestedly, the situation is one, unfortunately not unknown, wherein a public official fails properly to perform the duties of his office, and the remedy is that inherent in the theory of representative government, to replace him by another. If the result brought about by the statutes, which are evidently designed to produce a nice balancing of powers between the two boards do not serve the public interests, the recourse is not, where no justiciable rights are involved, to seek to make the courts arbiters in a controversy essentially political, but to ask the legislature to change or better define the respective powers of the boards."

The court cannot agree with plaintiff's claim that the words "with such money as may be received from other sources for school purposes" in § 10-222 apply to state and federal grants to education, which are received by the treasurer of the city and not by the board of education.

Since defendant did not at time of trial press its claim for relief set forth in its counterclaim, no action is taken thereon.

The issues are found in favor of the defendant to the extent that the answers to questions (1), (2) and (3) propounded in the complaint have been answered as hereinabove set forth, and judgment may enter incorporating said answers, without costs.