JOHN H. FOWLER ET AL. *v.* TOWN OF ENFIELD

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued December 6, 1951—decided February 5, 1952

*William S. Gordon, Jr.,* and *Charles S. House,* with

whom were *Stephen M. Riley* and, on the brief, *Mary C. Fitzgerald*, for the appellants (plaintiffs).

*Hugh M. Alcorn, Jr.*, with whom were *Francis J. Fahey* and, on the brief, *Henry P. Bakewell*, for the appellee (defendant).

BROWN, C. J.   The plaintiffs in this action are teachers or other members of the personnel employed in the public schools of the defendant town for the school year 1946-47.   Each of them seeks to recover $150 as the unpaid balance of a $250 increase in salary claimed to have been granted, as an amendment to his contract, by the defendant's board of education towards the end of the school year.   The defendant denied liability because its board of finance had refused to recommend to a special town meeting an additional appropriation to provide the essential funds and avoid creation of a deficit, with the result that no appropriation was made.   The defendant counterclaimed to recover the $100 paid to each plaintiff on account.   The court rendered judgment for the defendant on the complaint and for the plaintiffs on the counterclaim. The plaintiffs have appealed.

Much of the record, consisting of 432 printed pages and a mass of exhibits, has no essential bearing upon the issue decisive of the appeal.   Even if deemed material during the trial, it might better have been eliminated by stipulation from the present record. The decisive question is whether the action of the board of education in entering into the purported amendment of its contracts with the plaintiffs providing a $250 increase in salary for the school year 1946-47 was valid and effective to render the defendant town liable for the unpaid $150 balance of this increase.   In reaching our decision, we restrict our dis-

cussion of the facts found, the court's conclusions and the principles of law to those material and controlling in the determination of this issue. The complaint was in four counts corresponding to the four classifications of board of education employees. No claim is made that there are any differences in their legal status, and when we refer to the plaintiffs we refer to all plaintiffs. We summarize the facts found. They are subject to no correction which will advantage the plaintiffs.

The town of Enfield does not have a special charter; it functions under the General Statutes through its board of selectmen, board of finance, board of education and such service departments as police, street and public health, the necessary funds for which are provided by the town. The statutes give to the board of finance the general supervision and management of the defendant's financial affairs. General Statutes, c. 36. In discharge of those duties, the board prepares and recommends a budget for approval by the annual town meeting in May, and the tax is set at a rate sufficient to provide funds to meet the budget as approved. General Statutes § 777. The board of education manages the public schools of the town pursuant to the applicable statutes. In May, 1946, the board of education entered into a contract with each of the plaintiffs for the school year 1946-47 specifying the salary at which he was employed by the town. The salaries so provided for, and subsequently paid, were larger than those budgeted and paid for the school year 1945-46. The contract provided that the plaintiffs should be notified of any adjustment of salary by the first of June preceding the opening of the school year in which the change was to become effective and that the plaintiffs agreed to accept and the town to pay the specified salary, and it included this further specific undertaking by each plaintiff: "I will abide by the

terms of the contract given me at the time of this appointment." It further stated that either party might terminate the contract upon thirty days' written notice. After the board of education had entered into these contracts with the plaintiffs, it submitted its budget to the board of finance as the statute requires. General Statutes § 1480. Incorporated in the budget was an item to meet the amount of the salaries to which the plaintiffs were entitled during the school year by virtue of their executed contracts. The budget was approved by the board of finance without material change and thereafter the town meeting made an appropriation to provide for the expenses so shown. The funds sought by the board of education were thus made available to it to meet all expenses for the operation of the schools, including the payment of the salaries for which the plaintiffs had agreed they would render services for the entire school year. The plaintiffs worked and were paid as agreed under these contracts for the entire school year of 1946-47. In addition they received the $100 adjustment referred to below. During the school year they gave no notice of intention to terminate their contracts.

On December 10, 1946, the welfare committee of the Enfield Teachers' Association appeared before the board of education, petitioned for a "minimum salary adjustment of $500.00 retroactive to September 4, 1946" and demanded that the chairman of the committee be notified by December 18, 1946, of the board's action upon the petition. The board learned by informal inquiry of the board of finance that that body was not disposed to approve the increase demanded. On January 19, 1947, the board of education by formal vote requested approval from the board of finance of a salary increase of $250 for each full-time employee. In response to this vote, the latter board on February

5, 1947, advised the former that it had considered the demand for the salary increase and that it was denied. Meantime the teachers' welfare committee was also negotiating with the board of education for a requested salary increase of $500 for the year 1947-48. On February 11, 1947, after a full discussion in a joint meeting with representatives of the board of education, the acting superintendent of schools and the teachers' association, the board of finance declined to approve the increase for 1946-47. On February 24, 1947, the board of finance met again and considered not only the teachers' demand for an increase for the current year but also requests for increases by employees in other departments of the town. At this meeting the board voted to deny all requests for 1946-47 salary increases. Although on March 11, 1947, the board of education, notwithstanding the disapproval of the board of finance, "went on record" as favoring the $250 increase and requested a written decision on it from the board of finance, the latter did not alter its prior decision disapproving the demanded increases.

On March 16, 1947, the board of education met jointly with the teachers' welfare committee and the Connecticut State Teachers' Association, which had openly entered the controversy. The welfare committee and the state association were exerting the greatest possible pressure upon the board, insisting that definite action be taken upon the plaintiffs' demands and stating that otherwise "it was very probable an emergency would result." A representative of the state association who attended the meeting urged that the teachers' demands be complied with, stating that "otherwise the situation would become uncontrollable." For several days subsequent to March 16, 1947, the welfare committee and the state association continued to apply heavy pressure on the board of education to grant their

demand for the salary increase, and it appeared to the board that "the teachers were prepared to take drastic steps." The board voted on March 21, 1947, to grant the demand for an increase of $250 for the current school year over and above the amounts for which the plaintiffs had respectively agreed to render services to the town. When this action was reported to a meeting of the board of finance on March 26, 1947, the latter adhered to its previous action disapproving the increase.

At the time of its meeting on April 8, 1947, the board of education recognized that if the salary increase was granted its appropriation would be exceeded and a deficit would result. Accordingly, it voted to defer further action until assured by counsel that its action would be legal. On April 15, 1947, however, the teachers' welfare committee gave the board of education the utimatum that the committee had been authorized to "call a work stoppage at their discretion if the Board voted not to grant the increase" and that upon the denial of their demand "a work stoppage would undoubtedly follow very soon." These declarations constituted a clear threat to the board as the culmination of the long campaign of pressure to which it had been subjected. The statements neither referred to nor contemplated action pursuant to the contract provision regarding thirty days' notice of termination. Immediately upon receipt of this ultimatum the board of education voted to grant the plaintiffs' demand for an increase of $250 for the current school year and to amend the existing contracts accordingly, notwithstanding its knowledge that this would necessitate expenditures in excess of the appropriation for school purposes and result in a deficit. After the selectmen had advised the board of finance of this action by the board of education and of its request that the necessary

measures be taken to obtain an additional appropriation of $23,250 to provide for it, the board of finance met on April 21, 1947, considered various departmental requests for the next fiscal year and conducted a detailed discussion of the board of education's budget, but it did not recede from its prior decision disapproving the demanded increase for the year 1946-47.

On May 9, 1947, each of the plaintiffs received, in addition to his regular pay for that pay-roll period under his original contract, the sum of $100, which purported to be on account of the $250 increase specified in a written "amendment" of his contract executed as of April 16, 1947, pursuant to the action by the board of education. The payment of these additional amounts resulted in an eventual deficit of $8311.16 in the board's total appropriation. Counsel for the Connecticut State Teachers' Association attended a meeting of the board of education on May 20, 1947. Pursuant to his advice, it was voted to notify the plaintiffs that the board could not make the payment of the $150 balance which had been voted May 13, 1947, because of lack of funds. The plaintiffs were so notified on May 20, 1947, and brought this action two days later. Payment of the $150 has never been made.

The following is the gist of the court's vital conclusions in support of its judgment: (1) The board of finance in rejecting the request of the board of education for the salary increase exercised its sound judgment and properly exercised its discretion; (2) since the board of education had contracted with the plaintiffs for their services for the school year 1946-47, and in reliance thereon the town had adopted its budget and made its appropriations therefor, the board could not subsequently during the year lawfully increase the amount to be paid for such services, in the absence of approval by the board of finance and a proper appro-

priation by the defendant town; (3) the action of the board of education in contracting so to do was illegal and void; (4) the defendant town is not indebted to any of the plaintiffs.

The plaintiffs' first assignments of error are based on their claims that in so far as the judgment is based on duress, accord and satisfaction, waiver or abandonment, it is erroneous because the issues named are not raised by the pleadings. The conclusions of the trial court set forth above sustain its judgment without reference to these issues. The plaintiffs take nothing by these assignments.

A town board of education is a creature of statute. The pertinent provisions as to its fiscal duties and powers are found in § 1480 of the General Statutes. After providing for the preparation by it of an annual estimate of the cost of maintaining the public schools and for the submission thereof to the board of finance, the statute specifies that the money appropriated by the town "for the maintenance of public schools shall be expended by and in the discretion of the board of education." Then, after providing for the transferring of unexpended balances, it continues: "Expenditures by the board of education in each . . . town . . . shall not exceed the appropriation made by the . . . town . . ., with such money as may be received from other sources for school purposes." The town board of finance is likewise a creature of statute. Section 777 of the General Statutes, after setting forth the duties of the board of finance as to the preparation and publication prior to the annual town meeting of the prescribed statements of the town's finances, requires that it shall submit an estimate of expenditures for the ensuing fiscal year with its recommendations to the town meeting, which shall act thereon "and make such specific appropriations as may appear advisable, but no ap-

propriation shall be made exceeding in amount that for the same purpose recommended by the board and no appropriation shall be made for any purpose not recommended by the board." Section 780, in so far as applicable to the situation in this case, states: "No officer of such town shall expend or enter into any contract by which the town shall become liable for any sum which, with any contract then in force, shall exceed the appropriation for the department . . . ." It further provides that, should occasion arise whereby more money is needed by a department in an amount in excess of $500, the necessary appropriation "shall not be made until, upon the recommendation of the board [of finance], the same shall have been voted by the town at a meeting called for such purpose." Whether the town is liable for the balance of the salary increase contracted for by the board of education depends upon the effect to be accorded the above statutes.

The question is whether the contract was rendered unenforceable by the refusal of the board of finance to recommend the requisite additional appropriation. A town board of education is an agency of the state in charge of education in the town, and broad powers are granted it by the legislature to that end. In the exercise of those powers or in the incurring of expense necessitated thereby to be paid by the town, the board of education is beyond control by the town or any of its officers except as limitations are found in statutory provisions. *Board of Education of Stamford* v. *Board of Finance*, 127 Conn. 345, 349, 16 A. 2d 601; *Groton & Stonington Traction Co.* v. *Groton*, 115 Conn. 151, 155, 160 A. 902; *State ex rel. Board of Education* v. *D'Aulisa*, 133 Conn. 414, 419, 52 A. 2d 636; *Lucier* v. *Norfolk*, 99 Conn. 686, 695, 122 A. 711; *State ex rel. Huntington* v. *Huntington School Committee*, 82 Conn. 563, 566, 74 A. 882. The limitations applicable in the

case at bar are contained in the above quotations from the statutes. The controlling rule of law is thus stated in the *Stamford* case, supra, 350: "[1] Where a town board of education includes in the estimates it submits to a board of finance expenditures for a purpose which is not within statutory provisions imposing a duty upon it nor within one which vests it with a discretion to be independently exercised, the board of finance may, if in its judgment, considering not only the educational purpose to be served but also the financial condition of the town, it finds that the expenditure is not justified, decline to recommend an appropriation for it; [2] where, however, the estimate is for an expenditure for a purpose which the statutes make it the duty of the board of education to effectuate or they vest in the board of education a discretion to be independently exercised as to the carrying out of some purpose, the town board of finance has not the power to refuse to include any appropriation for it in the budget it submits and can reduce the estimate submitted by the board of education only when that estimate exceeds the amount reasonably necessary for the accomplishment of the purpose, taking into consideration along with the educational needs of the town its financial condition and the other expenditures it must make. The board of finance in such a case must exercise its sound judgment in determining whether or to what extent the estimates of the board of education are larger than the sums reasonably necessary and if it properly exercises its discretion and the budget is approved by the town the board of education has no power to exceed the appropriations made." In applying the rule to the present case, the words "the estimates of the board of education" must be held to refer to the combined total of the original estimate upon which the appropriation was

made and that for the salary increase which the board of finance refused to recommend.

These citations from the statutory and case law plainly indicate the reason for the frequent clashes between boards of education and boards of finance. Each board is given broad, important and far-reaching powers. As is illustrated by the case at bar, questions may well arise as to the precise limits of the powers of each. Boards of education are charged with the duty of providing reasonable educational facilities. Boards of finance are charged with the duty of providing the necessary funds and, at the same time, of seeing to it that expenditures for the educational program are kept within reasonable bounds in view of the over-all financial resources of the town. Until there is a clear legislative directive which more explicitly defines the respective authority of the two boards, the clashes are likely to persist. Under the rule heretofore applied, as quoted from the *Stamford* case, these conflicts can only be settled by a judicial determination testing the discretion exercised.

Since there is no doubt that the providing of teachers is a duty imposed upon the board of education by the statutes, the validity of its action in granting the increase must be tested by (2) of the above rule. This resolves the question to whether or not the board of finance in refusing to recommend an appropriation for the salary increase exercised its sound judgment as required and properly exercised its discretion. In other words, was it warranted in deciding that the salary increase was beyond the amount reasonably necessary for the staffing of the schools for 1946-47, taking into consideration the educational needs of the town in connection with its financial condition and the other expenditures it must make? The vital fact involved was that the appropriation originally made was

adequate to pay in full for this staffing under valid contracts executed by the plaintiffs before the school year began. When this fact exists, it is difficult to imagine a situation in which the refusal of the board of finance to make a recommendation for an additional appropriation would constitute an abuse of discretion as a matter of law. Certainly, no such conclusion is required in the case at bar. These contracts, in the absence of a breach thereof, or the giving of the thirty days' notice of termination provided for therein, guaranteed that the teaching staff would be available and would function for at least substantially the balance of the school year. The board of finance might reasonably have concluded that the plaintiffs would neither collectively commit the illegal act of striking nor individually be willing, by giving thirty days' notice, to relinquish the positions which were then under the law assured to them for the remainder of the current school year. In other words, it might well have appeared to the board that the schools would continue to be operated by the same personnel without any increase in salaries. The court was fully warranted in its decisive conclusion that in reaching this decision the board of finance exercised its sound judgment and properly exercised its discretion. While this is decisive of the present appeal, the factual situation presented by the plaintiffs' conduct necessitates some further comment lest a mistaken implication be attributed to our decision.

Upon the facts which the court has found, the position of the plaintiffs implicit in their demands is one which neither legally nor morally commends itself. To accomplish their purpose, to coerce the board of education, the plaintiffs threatened to cease work in disregard of the express provisions of their contracts. This was illegal. So too was their further threat to resort

to a strike to enforce their demands.  *Norwalk Teachers' Assn.* v. *Board of Education,* 138 Conn. 269, 276, 83 A. 2d 482.  Neither by committing nor threatening to commit an illegal act or acts can one enhance his legal rights.  The pleadings in the case at bar did not, however, present the issue whether illegal conduct of the plaintiffs caused the board of education to enter into the contracts with them for the $250 increase.  We pointed out in the preceding paragraph that the board of finance might well have concluded that notwithstanding the threats of the plaintiffs they would not in fact have breached their contracts.  It is not to be inferred from this statement that, had the board reached the opposite conclusion, disapproval by it of the increase would have constituted an abuse of its discretion.  On the contrary, in a case like the present, if the court upon issue duly joined found that illegal conduct of the plaintiffs was the proximate cause of an increase granted to them by the board of education, in no event could a recommendation by the board of finance of an appropriation by the town to pay such an increase either render the plaintiffs' contracts therefor binding upon the town or warrant an appropriation by it to provide for payment thereunder.

There is no error.

In this opinion the other judges concurred.