## BOARD OF EDUCATION OF THE TOWN OF ELLINGTON
### *v.* TOWN OF ELLINGTON ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

1

Argued May 14—decided July 11, 1963

*Robert D. King,* with whom, on the brief, was *Robert C. DuBeau,* for the appellants (defendants).

*William W. Sprague,* for the appellee (plaintiff).

*J. Read Murphy,* as amicus curiae.

BALDWIN, C. J.   This action for a declaratory judgment and an injunction arises out of a dispute between the board of education of the town of Ellington, hereinafter referred to as the plaintiff, and the board of finance of that town, hereinafter referred to as the defendant.   Ellington operates under a town meeting form of government, with a board of selectmen and other boards and commissions as authorized by the General Statutes.   Its fiscal year extends from July 1 to the following June 30.   In 1958, the town established the defendant pursuant to General Statutes § 7-340.   Since

then, the plaintiff and the defendant have disagreed over their respective powers in the management of funds appropriated by the town for school purposes.

Prior to April 4, 1961, when the town held its annual meeting to consider and act on appropriations for the ensuing fiscal year, the plaintiff, pursuant to General Statutes § 10-222, submitted to the defendant an estimate of its budget requirements for the fiscal year 1961-62 in the total amount of $699,187. This estimate listed, among other items, $410,200 for classroom teachers, $9706 for a curriculum coordinator, $18,854.50 for maintenance of the school properties, and $19,656.14 for capital outlay. The defendant recommended to the town meeting a total appropriation of $605,204.43 for the plaintiff's budget for the fiscal year 1961-62. This amount allowed no more than $379,000 for classroom teachers, thereby providing for three fewer teaching positions than the plaintiff had requested. The sum did not include any appropriation for a curriculum coordinator, for maintenance of school properties or for capital outlay. The defendant, however, recommended that there be included in the budget for general government services two special appropriations, totaling $46,300. One, for $21,065, was to a contingency fund; $16,300 of it would be available for the three teaching positions in question, but only if they were actually filled. The other appropriation, for $25,235, was to a capital account; from it capital outlay for school purposes as well as expenditures for the maintenance of school properties was to be made by the selectmen on the plaintiff's request. These two appropriations were intended by the defendant for school purposes only. Both were for purposes for

which the plaintiff was entitled by law to request funds in its own budget. By making the two appropriations, the defendant found, in effect, that the financial condition of the town was such that it could afford the total amount of these expenditures for school purposes.

At the town meeting on April 4, 1961, the budget estimates recommended by the defendant were approved. The total appropriation of $605,137 which was made directly to the plaintiff was inadequate to operate the schools for the entire fiscal year 1961-62. Unspent and unencumbered funds in the plaintiff's budget could not last beyond January, 1962. The plaintiff twice sought to have $46,300, the amount of the two special appropriations in the general government budget, transferred to the plaintiff's budget, but the defendant refused. Notwithstanding the fact that the plaintiff had been forewarned by the defendant that no appropriation for a curriculum coordinator would be recommended, the plaintiff renewed the contract of the incumbent curriculum coordinator for the fiscal year 1961-62. The plaintiff considered a curriculum coordinator very important to the school system.

The trial court rendered judgment declaring that the defendant could not, pending the need for or accomplishment of specific purposes for which the plaintiff had requested appropriations in its own budget, lawfully establish in separate funds appropriations for those purposes. The court also issued a mandatory injunction ordering the defendant to transfer the $46,300 from the general government budget to the plaintiff's budget. The defendant has appealed.

It is obvious that the two boards were at odds as to which should have priority: expenditures for

unfilled teaching positions, school property maintenance and capital outlay or expenditures for a curriculum coordinator. The defendant sought to resolve this dispute by recommending the appropriation of moneys for school property maintenance and capital outlay in the general government budget, where the moneys would be expended, for these purposes only, by the selectmen on request by the plaintiff, and by recommending the appropriation of moneys to a contingency account in the general government budget, to be expended only after the plaintiff had incurred definite obligations which had previously been approved by the defendant. The defendant's purpose in recommending the establishment of the capital and contingency accounts in the general government budget was to prevent the plaintiff from using the sums involved for purposes other than those specified in the defendant's recommendations. Since the defendant recommended no appropriation in the plaintiff's budget for a curriculum coordinator, and 80 percent of the appropriation in the plaintiff's budget had already been contracted for, it would be extremely difficult, if not impossible, for the plaintiff to make transfers within its own budget to employ a curriculum coordinator.

"A town board of education is an agency of the state in charge of education in the town, and broad powers are granted it by the legislature to that end. In the exercise of those powers or in the incurring of expense necessitated thereby to be paid by the town, the board of education is beyond control by the town or any of its officers except as limitations are found in statutory provisions." *Fowler* v. *Enfield*, 138 Conn. 521, 530, 86 A.2d 662, and cases cited. In the absence of special charter provisions,

the power of any municipality to control the budget of its board of education is derived from General Statutes § 10-222. This statute requires the board of education to prepare an itemized estimate of the cost of maintaining the public schools for the ensuing year and to submit its estimate to the board of finance at least two months before the annual meeting at which appropriations are to be made. The estimate must be itemized so that the board of finance can determine whether a proposed expenditure is for a purpose which it is the duty of the board of education to effectuate or which the board of education can determine in its own independent discretion, or, on the other hand, whether the proposed expenditure is for purposes not within either of those two classifications. *Fowler* v. *Enfield,* supra, 531; *Board of Education of Stamford* v. *Board of Finance,* 127 Conn. 345, 350, 16 A.2d 601; *Groton & Stonington Traction Co.* v. *Groton,* 115 Conn. 151, 161, 160 A. 902. In Ellington, the power of budgetary control is exercised in the first instance by the board of finance, acting under chapter 106 of the General Statutes, and, ultimately, by the town meeting, which can reduce, but cannot increase, the appropriations recommended by the board of finance. General Statutes § 7-344.

The function of a board of finance is "first, to eliminate wasteful or extravagant expenditures by considering the financial aspects of the municipal government as a whole rather than from the limited viewpoint of any particular department, whether it is the department in charge of education or of fire prevention or of police protection; and, secondly, to insure, as far as possible, the payment of the municipality's current debts out of its current income." *Risi* v. *Norwalk,* 144 Conn. 525, 528, 134

A.2d 514; see *Groton & Stonington Traction Co.* v. *Groton,* supra, 158. To fulfil this function, the board of finance has a broad but not unlimited power to determine the amount that the municipality will appropriate, among other things, for educational purposes. "Where a town board of education includes in the estimates it submits to a board of finance expenditures for a purpose which is not within statutory provisions imposing a duty upon it nor within one which vests it with a discretion to be independently exercised, the board of finance may, if in its judgment, considering not only the educational purpose to be served but also the financial condition of the town, it finds that the expenditure is not justified, decline to recommend an appropriation for it; where, however, the estimate is for an expenditure for a purpose which the statutes make it the duty of the board of education to effectuate or they vest in the board of education a discretion to be independently exercised as to the carrying out of some purpose, the town board of finance has not the power to refuse to include any appropriation for it in the budget it submits and can reduce the estimate submitted by the board of education only when that estimate exceeds the amount reasonably necessary for the accomplishment of the purpose, taking into consideration along with the educational needs of the town its financial condition and the other expenditures it must make. The board of finance in such a case must exercise its sound judgment in determining whether or to what extent the estimates of the board of education are larger than the sums reasonably necessary and if it properly exercises its discretion and the budget is approved by the town the board of education has no power to exceed the appropriations made."

*Board of Education of Stamford* v. *Board of Finance,* supra; *Fowler* v. *Enfield,* supra, 531; *Groton & Stonington Traction Co.* v. *Groton,* supra, 159; see also *Board of Education of West Haven* v. *Carlo,* 20 Conn. Sup. 220, 227, 131 A.2d 217.

General Statutes § 10-220 invests boards of education with the exclusive power to maintain public schools. General Statutes § 10-222 not only requires the board of education to prepare, for the purpose of securing appropriations, estimates of the cost of maintaining schools but specifically provides that the "money appropriated by any city, town or school district for the maintenance of public schools shall be expended by and in the discretion of the board of education." The town of Ellington is a school district under General Statutes § 10-240. Section 10-222 provides further that "[a]ny . . . board [of education] may transfer any unexpended or uncontracted-for portion of any appropriation for school purposes to any other item of . . . [the] itemized estimate." The clear intendment of § 10-222, when read in connection with § 10-220, is that all appropriations for school purposes shall be made to the board of education to be expended by that board. The number of teaching positions necessary in the public schools, the need for a curriculum coordinator, and the maintenance of school properties are matters within the sound discretion of the board of education under General Statutes § 10-220. This is not to say that the board of education can act without restraint and that the board of finance cannot control the total amount of appropriations. Its control, however, must be exercised reasonably by taking into consideration the duty of the board of education to maintain in the town a program of educational opportunity which meets

the requirements of state law; the power of the board of education to exercise a sound and reasonable discretion in carrying out its duties; and the town's financial needs and resources. *Fowler* v. *Enfield*, supra; *Board of Education of Stamford* v. *Board of Finance*, supra; *Groton & Stonington Traction Co.* v. *Groton*, supra, 159; *Board of Education of West Haven* v. *Carlo*, supra.

The defendant, by recommending school appropriations to the extent of $46,300 in addition to the amount it recommended for the plaintiff's budget, has found, in effect, that the additional sum would not be unreasonable, unnecessary or beyond the resources of the town to provide. The plaintiff seeks to have the $46,300 put in its own budget. If the plaintiff abuses its power to transfer funds and thereby neglects the proper maintenance of the school properties or fails to provide some necessary school function, the problem becomes a political one which is within the power of the electorate to correct at the next election by changing the membership of the board; see *Canzonetti* v. *New Britain*, 147 Conn. 478, 482, 162 A.2d 695; *Board of Education of Stamford* v. *Board of Finance*, supra, 353; or, under some circumstances, the state board of education may be petitioned. See General Statutes § 10-186; *Waterford* v. *Connecticut State Board of Education*, 148 Conn. 238, 169 A.2d 891. In this vein, it should be noted that the members of boards of education act under definite statutory strictures, both as a board and individually. Once their appropriation for any fiscal year has been exhausted, they cannot expend town funds unless the board of finance makes a special appropriation, and if the funds needed exceed certain amounts, a town meeting must vote the appropriation on recommenda-

tion of the board of finance. General Statutes
§ 7-348; *State ex rel. Board of Education* v.
*D'Aulisa,* 133 Conn. 414, 421, 52 A.2d 636. Further-
more, if illegal expenditures are made, the in-
dividual members of the board can incur a personal
civil liability. General Statutes § 7-349. The
recommendation of the defendant that certain funds
for school purposes be placed in the general gov-
ernment budget, to put them beyond the power of
the plaintiff to transfer or expend at its discretion,
contravened General Statutes § 10-222 and con-
stituted an illegal restriction on an appropriation
for strictly educational purposes.

The defendant concedes that all appropriations
placed in the plaintiff's budget may be expended
by the plaintiff within its discretion. The defend-
ant claims, however, that appropriations for educa-
tional purposes can also be made to the general
government budget by establishing therein con-
tingency funds under General Statutes § 7-348. It
argues that this procedure can be followed so that
funds for certain specific purposes for which the
plaintiff had requested appropriations will be used
for those purposes and will not be transferred to
some other purpose, such as, for example, the em-
ployment of a curriculum coordinator. If the de-
fendant is right, the discretion accorded to a board
of education by § 10-222 could be exercised in large
part by the board of finance and the legislative in-
tent of the statute completely thwarted. General
Statutes § 7-348 provides that a board of finance
may include in its recommended budget an ap-
propriation for a contingent fund in an amount not
to exceed 2 percent of the total estimated expendi-
tures for the current fiscal year and that no ex-
penditures or transfers shall be made from the con-

tingent fund until they are approved by the board of finance. This part of § 7-348 was first enacted in 1953. Public Acts 1953, No. 123; Cum. Sup. 1955, § 360d. The express purpose of the enactment, which came in the wake of an opinion by the attorney general on July 10, 1951, proscribing contingent funds in municipal budgets; 27 Conn. Atty. Gen. Rep. 95; was, as stated by the proponents of the legislation, to "simplify the manner of financial transactions in town operation." 5 H.R. Proc., Pt. 3, 1953 Sess., p. 853; see 5 S. Proc., Pt. 2, 1953 Sess., p. 788. To this end, a municipal contingent fund is ordinarily designed to serve as a depository of funds for meeting miscellaneous expenses not otherwise provided for, and for supplementing any department's appropriation which, unforeseeably, may become insufficient. 15 McQuillin, Municipal Corporations (3d Ed.) § 39.46. Under § 7-348, no expenditure from such a contingent fund can be made without the approval of the board of finance. The defendant, in recommending the appropriation of moneys for the limited purpose of supplementing only the plaintiff's appropriation and for meeting expenses which could hardly be deemed either unforeseeable or miscellaneous, clearly did not recommend the creation of the type of contingent fund contemplated by § 7-348. Moreover, the avowed purpose of the defendant was to circumvent the right of the plaintiff under § 10-222 to expend in its discretion all appropriations for educational purposes. Therefore, the $46,300 for educational purposes in the contingency and capital accounts belongs in the plaintiff's budget. See *Board of Education of Stamford* v. *Board of Finance,* supra, 352.

The defendant contends that the court erred in

issuing a mandatory injunction ordering the transfer of the $46,300 from the general government budget to the plaintiff's budget. The town's fiscal year 1961-62 has passed, and the issue may seem academic. The judgment in this case, however, was rendered on January 27, 1962, and, under the circumstances here present, we will consider the issue as of that date. That a court cannot compel a public official to perform an act which, under the law, is within his discretion requires no citation of authority. The defendant had recommended the appropriation of an additional $46,300 for school purposes, and the town meeting approved its recommendation. As we have stated hereinbefore, this action was tantamount to a finding by the defendant, approved by the town meeting, that the appropriation was necessary and within the financial resources of the town. The defendant, in placing the moneys in the capital and contingency accounts of the general government budget, misconceived the law. The moneys belonged in the plaintiff's budget. The defendant had no discretionary power to place them elsewhere. So long as the purpose of the appropriation remains unaltered, it is not necessary to resubmit the disposition of these moneys to a vote of the electors. The defendant's misconception of its powers when it recommended the misplacement of the moneys, after it had seen fit to approve them for strictly educational purposes, was properly rectified by the court's issuance of the mandatory injunction. General Statutes § 52-471; see *Mayor of Athens* v. *Wansley,* 210 Ga. 174, 178, 78 S.E.2d 478; *Downing* v. *Erie City School District,* 360 Pa. 29, 34, 61 A.2d 133.

There is no error.

In this opinion the other judges concurred.