[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
BACKGROUND
The plaintiffs, the New Haven Board of Education and Reginald May, the Superintendent of Schools, have brought a declaratory judgment action in fifteen counts, seeking a determination as to whether the defendants, the City of New Haven and the Board of Aldermen, may require the Board of Education, in accordance with New Haven Code § 2-40, to obtain approval from the Board of Aldermen for multi-year agreements entered into by the Board of Education. CT Page 12263 (Second Amended Complaint. dated August 10 1994).[1]
The parties have stipulated to the following. The Board of Education entered into various contracts for periods in excess of one year, but the contracts were not submitted for aldermanic approval. (Stipulation, dated January 11, 1994, ¶¶ 1, 2). The funds used to meet the Board of Education's annual obligation under these contracts came from its annual budget appropriations voted by the Board of Aldermen; however, the multi-year contracts were not identified as such to the Board of Aldermen as part of the budgetary process. (Stipulation, ¶ 3). The controller refused to authorize payments with respect to these contracts unless they were submitted for aldermanic approval. (Stipulation, ¶ 4). The Board of Education claims that "it has the legal right to enter into these multi-year contracts without regard to New Haven Code § 2-40
and has no obligation to submit its multi-year contracts for aldermanic approval." (Stipulation, ¶ 5). Conversely, the City and the Board of Aldermen claim "that the plaintiff has the same obligations under the New Haven Charter and Code as other city departments with respect to prior approval of multi-year contracts." (Stipulation, ¶ 6). They further assert that "the contracts are null and void if the prior approval of the Board of Aldermen has not been obtained." (Stipulation, ¶ 7).
The parties are seeking a declaratory judgment with respect to the rights and legal relations between the plaintiff, the Board of Education, and the defendants, the City of New Haven and the Board of Aldermen, "with regard to the scope of authority of the Board of Education to enter into these multi-year contracts whose term extends beyond the Board of Education's annual operating budget appropriation authorized annually by the Board of Aldermen." (Stipulation, ¶ 8).
Specifically, the Board of Education seeks a determination as to "whether multi-year agreements entered into by [the] Board of Education for educational goods and services require approval by the Board of Aldermen pursuant to New Haven City Code § 2-40." (Second Amended Complaint). In addition, the Board of Education requests a determination of "whether multi-year lease agreements entered into by [the] Board of Education require approval by the Board of Aldermen pursuant to New Haven City Code § 2-40." (Second Amended Complaint). Finally, the Board of Education seeks a determination of "whether New Haven Board of Education agreements or leases containing a non-appropriation clause constitute multi-year agreements or leases so as to come within the purview of New CT Page 12264 Haven Code of Ordinances § 2-40." (Second Amended Complaint).
The parties have filed the following memoranda in support of their respective positions. The plaintiffs (hereinafter "Board of Education"), filed a memorandum on February 10, 1994, and the Board of Aldermen filed a memorandum in response on March 10, 1994. The City of New Haven, Board of Finance, Daniels, Halsey and Brown (hereinafter "the City") filed a separate memorandum on March 16, 1994. The Board of Education filed a reply brief on March 30, 1994. On September 9, 1994, the City filed an additional brief, and the Board of Education submitted a reply memorandum, dated September 14, 1994.
On September 14, 1994, the court, Booth, J., conducted a hearing on this matter.
STANDARD
"`An action for declaratory judgment is a special proceeding. . . .'" Wilson v. Kelly, 224 Conn. 110, 121,617 A.2d 433 (1992). "The purpose of a declaratory judgment action, as authorized by General Statutes § 52-29 and Practice Book § 390, is to `secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations
between parties.'" (Emphasis in original.) Id., 115.
General Statutes § 52-29(a) provides: "The superior court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment."
"In an action seeking a declaratory judgment, the sole function of the trial court is to ascertain the rights of the parties under existing law." Middlebury v. Steinmann,189 Conn. 710, 715, 458 A.2d 393 (1983).
ARGUMENTS
New Haven Code § 2-40 is entitled "Authorization of contractsto be executed one year from date." Section 2-40 provides that:
 No contract to be executed by the city after one year from the date thereof, shall be binding on the city, unless expressly CT Page 12265 authorized by law, or by a vote of the board of aldermen. (Code 1928, § 462).
(Board of Aldermen's Memorandum, dated March 10, 1994, Attachment.)
Specifically, the Board of Education argues that New Haven Code § 2-40 is invalid because it conflicts with General Statutes §§ 10-220 and 10-222. (Board of Education Memorandum, dated February 10, 1994, p. 3). The Board of Education notes that Connecticut's statutory scheme, including General Statutes § 10-220, confers broad discretion and power upon local school boards over educational policy, and, in the absence of a statutory or city charter prohibition, such boards have the power to enter into contracts for educational goods and services, and to bind municipalities to such contracts, as long as the goods and services are "`reasonable expenditures reasonably necessary to fulfill a statutory educational requirement.'" (Memorandum, pp. 7-8). The Board of Education maintains that the case law provides that "municipalities may not accomplish indirectly, through their control over municipal purse strings, what they could not lawfully accomplish directly — namely, control of the discretion to expend its appropriation for educational purposes, which is vested exclusively with the board of education under state law." (Memorandum, p. 9). It argues that the "contracts at issue in these cases are plainly within the scope of the Board's discretion in carrying out its statutory responsibilities." (Memorandum, p. 9). It emphasizes that "[w]hether such contracts are for multiple years does not affect the analysis." (Memorandum, p. 9).
The Board of Education recognizes that "the City has a legitimate interest in controlling its fiscal affairs and may exercise that control with regard to the Board of Education through the annual appropriation process." (Memorandum, p. 14). It maintains, however, "that the exclusive means by which municipalities may ordinarily exercise such fiscal control is through the annual budget review and appropriation process set forth in Conn. Gen. Stat. § 10-222." (Memorandum, p. 14). It argues that although a Board of Finance has the discretion to determine a total annual appropriation for educational purposes, such discretion "is subject to limitations." (Memorandum, pp. 14-15. In particular, it maintains that "it is not the function of the Board of Finance, through the exercise of its fiscal powers, to second guess the Board of Education on matters of educational policy." (Memorandum, p. 15). Once a municipality appropriates CT Page 12266 funds for educational purposes, the Board of Education argues that it, alone, "is exclusively charged with spending the appropriated funds for any purposes within its statutory authority, and may shift unexpended funds budgeted for one line item to any other line item." (Citations omitted.) (Memorandum, pp. 15-16). It concludes that the City has a proper means of exercising fiscal control over the Board of Education's annual expenditures, but that the City does not have the authority to circumvent the procedures set forth in General Statutes § 10-222 "through the use of a municipal ordinance." (Memorandum, p. 16.). The Board of Education further concludes that the City has no "authority under its charter or state statute to require Board of Aldermen approval over multi-year contracts for educational goods and services lawfully entered into by the Board of Education pursuant to the authority conferred by [General Statutes] § 10-220." (Memorandum, p. 16).
The Board of Aldermen counters that the disputed ordinance does not conflict with the statutes that give a school board discretion to spend annually appropriated funds for purposes contained in its itemized budget. (Board of Aldermen Memorandum, dated March 10, 1994, p. 2). It contends that the disputed ordinance merely regulates "the manner of financing the purchase of goods and services, not the educational policy behind the choice of goods or services." (Memorandum, p. 2). It argues that the Board of Education's position, "that it has unfettered discretion to enter into multi-year contracts, and to create future city obligations without prior aldermanic approval," is an impermissible infringement on the "municipal legislature's fiscal oversight duty to prevent ill-advised expenditures and to insure municipal indebtedness within its revenues." (Memorandum, p. 2). The Board of Aldermen observes that § 2-40 requires prior aldermanic approval of multi-year contracts unless contrary express statutory authorization exists. (Memorandum, p. 6). It emphasizes that General Statutes § 10-222 does not expressly authorize a school board to enter into multi-year contracts without municipal control, and that "[f]ar from conferring unfettered discretion on boards of education to obligate future municipal revenues for `educational needs,'" the statute merely confers discretion to expend appropriated funds for public school maintenance, which is exercised by transferring "`any unexpended or uncontracted-for portion of any appropriation for school purposes to any other item or such itemized estimate in its discretion.'" (Memorandum, p. 7). The Board of Aldermen emphasizes that the statute "specifically prohibits expenditures by boards of education which exceed their annual municipal appropriations." (Memorandum, p. 7). "Thus, by CT Page 12267 definition, because the plaintiff's discretion to obligate and expend funds is limited to its annual appropriation, its discretion cannot extend to making obligations beyond its discretion as with a multi-year contract." (Emphasis in original.) (Memorandum, pp. 7-8). It maintains that "[w]hile this case does not present any claim of the defendants' failure to make proper or reasonable budgetary appropriations, it does present the issue of what regulation may be imposed on the Board of Education after the annual appropriation is made." (Emphasis in original.) (Memorandum, p. 10). It argues that, pursuant to the New Haven Charter, the Board of Education, just like other city departments, is subject to post-appropriation fiscal control, including the manner in which it contracts for goods and services. (Memorandum, pp. 10-11).
The Board of Aldermen emphasizes that requiring the Board of Education to procure prior aldermanic approval over multi-year contracts "does not put any part of plaintiff's annual appropriation beyond the power of the plaintiff to transfer or expend, in its discretion." (Memorandum, pp. 14-15). Rather, "[i]t simply requires that plaintiff comply with the proper procedures for doing so." (Memorandum, p. 15). It argues that the disputed ordinance does not unlawfully restrict the Board of Education's determination "of what educational goods and services it deems necessary as a matter of educational policy on a year by year basis under its annual appropriation, only how it goes about contracting for them." (Emphasis in original.) (Memorandum, pp. 16-17). The Board of Aldermen concludes that § 2-40, which restricts the Board of Education's "ability to commit future years' appropriations, is not in conflict with its statutory educational duty. Multi-year contracts are financing mechanisms, not elements of educational policy." (Memorandum, p. 17).
The City also contends that the Board of Education's discretion applies only to the ultimate purposes for which it elects to spend appropriated funds, and that General Statutes § 10-222
does not expressly authorize a school board to enter into multi-year contracts without local governmental approval. (City's Memorandum, dated March 16, 1994, pp. 3-5). The City emphasizes that the Charter expressly provides that the Board of Aldermen has the power to provide for the form and to regulate the manner of making contracts, and that the Charter also provides that no department may even incur any liability in excess of the annual appropriation. (Memorandum, pp. 3-4). It further contends that "[r]equiring a contract to be annually renewed in the absence of CT Page 12268 aldermanic approval does not indirectly interfere" with the Board of Education's discretion to spend appropriated funds, and that "it actually enhances" the Board of Education's discretion. (Memorandum, p. 9).
The City also argues that interpreting § 10-222 to allow the Board of Education to enter into multi-year contracts without prior approval would lead to "anomalous and undesirable consequences," such as cronyism. (Memorandum, pp. 12-13). It maintains that accepting the Board of Education's "assertion of unlimited discretion" renders the budgetary approval process of § 10-222 "a meaningless exercise. . . ." (Memorandum, p. 14).
In its reply brief, dated March 30, 1994, the Board of Education responds that the state statutory scheme permits school boards to enter into contracts, including multi-year contracts, unless specifically prohibited by the terms of General Statutes § 10-222 or by some other state legislative enactment. (Reply Brief, p. 3). The Board of Education maintains that it is unnecessary to demonstrate any express authority beyond the discretion contained in §§ 10-220 and 10-222, and that the defendants "bear the burden of illustrating some express prohibition on the Board from entering into multi-year contracts." (Reply Brief, p. 3). In addition, it contends that the New Haven Charter does not expressly prohibit it from entering into multi-year contracts without prior aldermanic approval, and that the Charter provisions relied upon by the defendants are inapplicable to the Board of Education. The Board of Education emphasizes that, in the absence of a special charter provision, the City's ability to control the Board of Education's finances is limited to the provisions of § 10-222, but that nothing in that statute requires a school board to submit a multi-year contract to the financing authority for prior approval, nor does anything in the statute expressly prohibit multi-year contracts. (Reply Brief, pp. 9-10). It insists that "there is nothing in the statute to prevent the plaintiff from apportioning its expenses either in the current fiscal year or future years as it sees fit under its discretionary authority, so long as it complies with the bottom line of expending no more than its annual appropriation." (Reply Brief, p. 11).
The Board of Education contends that if the court concludes that "some generally worded provision of the New Haven Charter" represents a special act which prohibits it from entering into multi-year contracts without aldermanic approval, then any such charter restriction is "`inconsistent with and inimical to the CT Page 12269 efficient and proper operation of the education system otherwise entrusted by state law to the local board.'" (Reply Brief, pp. 12-13). It argues that if § 2-40 is upheld "the City, by means of the ordinance, has effectively abrogated the ability of the Board of Education to enter into any kind of meaningful contract, and has thereby severely hampered the Board's ability to exercise its discretion in providing educational services that are statutorily mandated." (Reply Brief, p. 16). Finally, the Board of Education contends that it is not subject to any post-appropriation fiscal control, because such restrictions would violate its discretion with respect to its ability to expend appropriated funds. (Reply Brief, p. 17).
The City offers three additional arguments in a supplemental brief, dated September 9, 1994. The City argues that there is evidence that the Board of Education has entered into sequential one year contracts and that "[t]his practice is still objectionable as involving the functional equivalent of a multiyear contract, the practice being merely an attempt to bypass the need for Board of Aldermen approval." (Supplemental Brief, p. 2). In addition, the City maintains that in the case of Grant Simmons, CPAS v. NewHaven Board of Education, No. CV 92-0300432 S, Judicial District of Fairfield at Bridgeport, the Board of Education "is defending a lawsuit on the theory that it cannot enter into valid multiyear contracts, in contrast to their claim in the instant case." (Emphasis in original.) (Supplemental Brief, p. 2). The City asks the court to take "judicial notice of those pleadings from another branch of the Superior Court and the inconsistency which we consider, at the least, an admission against interest." (Supplemental Brief, p. 2). Finally, the City contends that the Board of Education has amended one of the multi-year contracts at issue "for an additional multiyear period and millions of additional dollars also without the approval of the Board of Aldermen." (Supplemental Brief, p. 3).
The Board of Education responds that the one-year contracts at issue in Grant Simmons, CPAS v. New Haven Board of Education are factually distinguishable from the contracts at issue in the present case, and that those contracts raise entirely different issues of law. (Reply Brief, dated September 14, 1994, pp. 3-4). The Board of Education maintains that in the Grant Simmons case it is arguing that once the Board of Education enters into a contract for the provision of professional services to be performed in the future, "the contract will be invalid and unenforceable because a municipal corporate board cannot bind its successor to a CT Page 12270 contract for professional services or for services that are governmental in nature." (Reply Brief, p. 4). In contrast, the Board of Education claims that it is arguing in the present case that, "a local board of education possesses statutory authority to enter into multi-year contracts without aldermanic approval, invalidating any ordinance mandating such prior aldermanic approval." (Reply Brief, pp. 4-5).
DISCUSSION
The court finds that New Haven Code § 2-40, the provision which requires prior aldermanic approval of multi-year contracts, is not inconsistent with General Statutes § 10-222 because (1) § 2-40 does not illegally impinge upon the Board of Education's ability to expend money appropriated "for the ensuing year . . . in the discretion of the board of education"; and (2) § 2-40 is consistent with the municipality's power, derived from § 10-222, to oversee the Board of Education's budget.
"`A town board of education is an agency of the state in charge of education in the town, and broad powers are granted it by the legislature to that end. In the exercise of those powers or in the incurring of expense necessitated thereby to be paid by the town, the board of education is beyond control by the town or any of its officers except as limitations are found in statutory provisions.'" Board of Education v. Ellington, 151 Conn. 1, 6,193 A.2d 466 (1963).
"General Statutes § 10-220 delegates the duty to provide and administer public education to local and regional boards of education." New Haven v. State Board of Education, 228 Conn. 699,703-04, 638 A.2d 589 (1994). This statute provides, in pertinent part, that "Each local or regional board of education shall maintain good public elementary and secondary schools, implement the educational interests of the state as defined in section 10-4a
and provide such other educational activities as in its judgment will best serve the interests of the school district . . . shall have charge of the schools of its respective school district . . . [and] shall have the care, maintenance and operation of buildings, lands, apparatus and other property used for school purposes. . . ." General Statutes § 10-220(a).
"In the absence of special charter provisions, the power of any municipality to control the budget of its board of education is derived from General Statutes § 10-222." Board of Education v.CT Page 12271Ellington, supra, 151 Conn. 6-7. This statute sets forth certain requirements with respect to budgets of boards of education and monies appropriated for such boards, and it provides, in relevant part, that "Each local board of education shall prepare an itemized estimate of the cost of maintenance of public schools for the ensuing year and shall submit such estimate to the board of finance in each town or city having a board of finance, to the board of selectmen in each town having no board of finance or otherwise to the authority making appropriations for the school district, not later than two months preceding the annual meeting at which appropriations are to be made. The money appropriated by any municipality for the maintenance of public schools shall be expended by and in the discretion of the board of education. Any such board may transfer any unexpended or uncontracted-for portion of any appropriation for school purposes to any other item of such itemized estimate. Expenditures by the board of education shall not exceed the appropriation made by the municipality, with such money as may be received from other sources." General Statutes § 10-222(a).
Although the educational duties of the state are delegated to local boards of education, the towns must provide some of the funding for education, therefore, "the financial relationship between the local board of education and the municipal government, in particular the board of finance of the town, is complex." NewHaven v. State Board of Education, supra, 228 Conn. 705-06. The financial relationship between these entities has been explained in the following manner. "`Where a town board of education includes in the estimates it submits to a board of finance expenditures for a purpose which is not within statutory provisions imposing a duty upon it nor within one which vests it with a discretion to be independently exercised, the board of finance may, if in its judgment, considering not only the educational purpose to be served but also the financial condition of the town, it finds that the expenditure is not justified, decline to recommend an appropriation for it . . . where, however, the estimate is for an expenditure for a purpose which the statutes make it the duty of the board of education to effectuate or they vest in the board of education a discretion to be independently exercised as to the carrying out of some purpose, the town board of finance has not the power to refuse to include any appropriation for it in the budget it submits and can reduce the estimate submitted by the board of education only when that estimate exceeds the amount reasonably necessary for the accomplishment of the purpose, taking into consideration along with the educational needs of the town its financial condition and the CT Page 12272 other expenditures it must make. The board of finance in such a case must exercise its sound judgment in determining whether or to what extent the estimates of the board of education are larger than the sums reasonably necessary and if it properly exercises its discretion and the budget is approved by the town the board of education has no power to exceed the appropriations made. Thus . . . only when a board of education is acting directly and in a reasonable manner to fulfill a statutory duty can it accurately be said that it functions outside the established municipal government structure. To hold otherwise would be tantamount to the giving of a blank check to boards of education to spend the money of the municipality without regard to economy, efficiency or other local needs.' (Internal quotations marks omitted.)" Id., 706-07, quotingWaterbury Teachers Assn. v. Furlong, 162 Conn. 390, 398-99,294 A.2d 546 (1972).
General Statutes § 10-222 neither expressly, nor impliedly, authorizes a board of education to enter into multi-year contracts without prior municipal approval. The statute expressly requires a board of education to prepare and submit "an itemized estimate of the cost of maintenance of public schools for the ensuing year. . . ." (Emphasis added.) General Statutes § 10-222(a). The statute further confers discretion upon a board of education to expend "money appropriated by any municipality for the maintenance of public schools. . . ." Id. In addition, the statute expressly permits a board of education to "transfer any unexpended or uncontracted-for portion of any appropriation for school purposes to any other item of such itemized estimate." Id. Further, the statute expressly provides that a board of education's expenditures "shall not exceed the appropriation made by the municipality. . . ." (Emphasis added.) Id.
The legislature, by express authorization, has evinced an intent to permit boards of education to enter into multi-year contracts in other situations. For example, General Statutes § 10-220, which sets forth the duties of a board of education, provides, in part, that the board shall make provisions enabling each child to attend some public day school, "and provide for the transportation of children wherever transportation is reasonable and desirable, and for such purpose may make contracts covering periods of not more than five years." In addition, General Statutes § 10-157(a), which relates to school superintendents, provides that a board of education "shall fix the salary of the superintendent and the term of office, which shall not exceed three years." Further, General Statutes § 10-157a, which authorizes CT Page 12273 boards of education to jointly employ a school superintendent, also empowers boards of education to enter into multi-year contracts with such superintendent. This statute provides, in part, that "[s]uch boards of education . . . shall specify in a written agreement the term of office of such superintendent, which shall not exceed three years. . . ." General Statutes § 10-157a.
In addition, the Board of Education's ability to enter into multi-year contracts, without prior approval, is not readily inferable from the statutory language. The discretion conferred upon boards of education by General Statutes § 10-222 is limited to expending monies that are appropriated annually on the basis of estimates submitted for an "ensuing year"; a multi-year contract, by definition, incurs a liability that extends beyond an "ensuing year."
The court finds that § 2-40 and General Statutes § 10-222 are not inconsistent because § 2-40 merely regulates the method of financing the purchase of educational goods and services, it does not seek to regulate the subject matter of such goods and services.
In Board of Education v. Ellington, supra, 151 Conn. 1, the court determined that a board of finance exceeded its authority by placing certain funds for school purposes beyond the reach of the board of education. The plaintiff, the board of education, had submitted an estimate for its annual budget requirements, which included amounts for certain specified purposes, to the defendant, the board of finance. The board of finance recommended a lesser total appropriation, and that sum excluded any appropriation for certain purposes specifically requested by the board of education. The board of finance, however, also recommended that two special appropriations be included in the general government services budget. These appropriations were intended by the board of finance "for school purposes only[,]" and both appropriations "were for purposes which the [board of education] was entitled by law to request funds in its own budget." Id., 4-5. The court observed that "[b]y making the two appropriations, the [board of finance] found, in effect, that the financial condition of the town was such that it could afford the total amount of these expenditures for school purposes." Id., 5. The budget estimate recommendations of the board of finance were approved, and, subsequently, the board of education sought to have the amount contained in the two special appropriations transferred to its budget; however, the board of finance refused. The court emphasized that the purpose of the board of finance "in recommending the establishment of the capital CT Page 12274 and contingency accounts in the general government budget was to prevent the plaintiff from using the sums involved for purposes other than those specified in the defendant's recommendations." Id., 6. The court determined that the recommendation of the board of finance "that certain funds for school purposes be placed in the general government budget, to put them beyond the power of the plaintiff to transfer or expend at its discretion contravened General Statutes § 10-222 and constituted an illegal restriction on an appropriation for strictly educational purposes." Id., 11.
In the present case, however, § 2-40 does not place the annual appropriation of the Board of Education beyond its discretionary power to expend or transfer for educational goods and services within a particular year. Rather, § 2-40 merely authorizes the Board of Aldermen to oversee the method of financing certain expenditures to the extent that such expenditures will incur financial liabilities in excess of one year.
The powers of a local board of education are not defined only by state statute. "[A] local charter may limit the powers of the local board of education where its provisions are `not inconsistent with or inimical to the efficient and proper operation of the education system otherwise entrusted by state law to the local boards.'" Cheshire v. McKenney, 182 Conn. 253, 259, 438 A.2d 88
(1980).
Article XXIX of the City of New Haven Charter of 1993, entitled "DEPARTMENT OF EDUCATION" does not address specific financing mechanisms, such as multi-year contracts, with respect to the purchase of educational goods and services by the Board of Education. The Charter does specifically provide elsewhere, however, that the Board of Aldermen "shall have power . . . to enact, alter or repeal ordinances . . . which orders, resolutions or ordinances may be for any of the following purposes, . . . (a) . . . to provide for the form and regulate the manner of making contracts. . . ." Charter of the City of New Haven of 1993, Art. IX, § 49; see also Charter of the City of New Haven 1980, as amended, Art. X, § 46. The Charter further provides that "[n]o city department, officer or board of commissioners shall incur any liability or expense by contract or otherwise for which said city shall be responsible in excess of the appropriations so made by said board of aldermen." Charter of the City of New Haven of 1993, Art. XI, § 59; see also Charter of the City of New Haven 1980, as amended, Art. XI, § 58.[2]
CT Page 12275
Section 2-40 is consistent with the City's power, derived from § 10-222, to oversee the Board of Education's budget.
The courts have previously addressed the respective functions of boards of education and boards of finance in the context of General Statutes §§ 10-220 and 10-222, and have recognized that there have been "frequent clashes between boards of education and boards of finance." Fowler v. Enfield, 138 Conn. 521, 532,86 A.2d 662 (1952). Generally, "[e]ach board is given broad, important and far-reaching powers." Id. However, "questions may well arise as to the precise limits of the powers of each." Id. "Until there is a clear legislative directive which more explicitly defines the respective authority of the two boards, the clashes are likely to persist." Id.
In the present case, however, the court holds that New Haven Code § 2-40 and General Statutes § 10-222 are not inconsistent because § 2-40 is a proper exercise of a municipality's function to consider the financial aspects of the municipal government as a whole, rather than from the limited viewpoint of a particular department.
As stated previously, a board of education has a statutory "duty to provide and administer public education"; New Haven v.State Board of Education, supra, 228 Conn. 703; and "[b]oards of education are charged with the duty of providing reasonable educational facilities." Fowler v. Enfield, supra, 138 Conn. 532. "Absent a statutory or special act prohibition, a board of education may contract with third parties for educational goods or services." Waterbury Teachers Assn. v. Furlong, supra,162 Conn. 399. It is possible, however, "that a board of education, less familiar with the finances of the town or perhaps with financial matters in general, if left without a check, might incur expenditures which are not reasonably necessary to serve those interests and the expenses of which the town could ill afford to meet." Id., 400.
The legislature established town boards of finance, in part, "to afford a check against the incurring of such expenses on the part of the town." Waterbury Teachers Assn. v. Furlong, supra,162 Conn. 400, citing Groton Stonington Traction Co. v. Groton,115 Conn. 151, 158, 160 A. 902 (1932). Generally, "[b]oards of finance are charged with the duty of providing the necessary funds and, at the same time, of seeing to it that expenditures for the educational program are kept within reasonable bounds in view of CT Page 12276 the over-all financial resources of the town." Fowler v. Enfield, supra, 138 Conn. 532. "The function of a board of finance is `first to eliminate wasteful or extravagant expenditures by considering the financial aspects of the municipal government as a whole rather than from the limited viewpoint of any particular department, whether it is the department in charge of education or of fire prevention or of police protection; and, secondly, to insure, as far as possible, the payment of the municipality's current debts out of its current income.'" Board of Education v. Ellington, supra, 151 Conn. 7.
In the present case, the Board of Education entered into various contracts for periods in excess of one year. (Stipulation, ¶ 1). Although the funds used to meet the Board of Education's annual contractual obligation came from the annual appropriation voted by the Board of Aldermen, these contracts were not identified as multi-year contracts to the Board of Aldermen as part of the budgetary process. (Stipulation, ¶ 3). By requiring prior aldermanic approval of the Board of Education's multi-year contracts, however, § 2-40 properly allows the Board of Aldermen to consider the financial aspects of the municipality as a whole, and to function as a "check" upon expenses that the City may be unable to afford.
Section 2-40 is "`not inconsistent with or inimical to the efficient and proper operation of the educational system'" entrusted to the Board of Education by the state; Cheshire v.McKenney, supra, 182 Conn. 259; because requiring prior aldermanic approval over multi-year contracts entered into by the Board of Education achieves a proper balance between the Board of Education's statutory discretion to expend appropriated funds for school purposes and the City's duty to oversee the finances of the entire town. Moreover, the discretion granted to the Board of Education by § 10-222 is discretion as to the use of annually appropriated funds. Nothing in that statute reasonably implies any discretion as to the use of funds beyond the annual appropriation.
The Board of Education also requested a determination as to "whether multi-year lease agreements entered into by [the] Board of Education require approval by the Board of Aldermen pursuant to New Haven City Code § 2-40." The court finds that, for purposes of its analysis, any differences between a multi-year contract and a multi-year lease are insignificant, and that a multi-year lease also requires approval by the Board of Aldermen. CT Page 12277
The Board of Education further requested a determination as to "whether New Haven Board of Education agreements or leases containing a non-appropriation clause constitute multi-year agreements or leases so as to come within the purview" of § 2-40. The court finds that, for the reasons discussed above, a multi-year contract or lease containing a non-appropriation clause also requires approval by the Board of Aldermen.
In conclusion, and as more fully set forth above, the court declares its judgment that:
1. Multi-year agreements entered into by the Board of Education for educational goods and services require approval by the Board of Aldermen pursuant to New Haven Code § 2-40.
2. Multi-year lease agreements entered into by the Board of Education require approval by the Board of Aldermen pursuant to New Haven Code § 2-40.
3. New Haven Board of Education agreements or leases containing a non-appropriation clause constitute multi-year agreements or leases so as to come within the purview of New Haven Code § 2-40.
The court by,
Kevin E. Booth, Judge.