[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, the New Haven Board of Education and Reginald Mayo, the Superintendent of Schools (hereinafter "Board of Education"), brought a declaratory judgment action in three counts against the defendants, the City of New Haven, the Board of Aldermen, the Board of Finance, John C. Daniels (the Mayor), Ralph W. Halsey, III (the Controller), and the Capital Projects Committee, to determine whether the defendants may "(1) unilaterally alter the annual budget adopted by the Board of Education; (2) direct the manner in which funds appropriated to the Department of Education may be expended except as to the total appropriation in any Capital Project classification; (3) alter specific items of the annual budget adopted by the Board of Education or to direct the method by which the amount appropriate shall be expended either directly or by implication or by implementation of capital budget procedures imposed on the Department of Education." Amended Revised Complaint, dated February 10, 1994, pp. 1-2.[1]
Subsequently, the Board of Education agreed to "withdraw the Third Count of the Amended Revised Complaint dated February 10, 1994, that states a claim for breach of an agreement between the Board of Education and former Mayor DiLieto. The plaintiff further withdraws the corresponding prayer for relief seeking specific performance of this agreement." Joint Stipulation of Facts, dated August 5, 1994, ¶ 31.
The Board of Aldermen filed its answer to the amended complaint on March 2, 1994, and the defendants, the Capital CT Page 12403 Projects Committee and the Office of the Mayor, filed a joint answer and special defenses on April 13, 1994.
In pertinent part, the parties have stipulated to the following facts. During the relevant time period, "[t]he Board of Finance reviewed the annual operating budget requests for the City's individual departments, and made recommendations to the Board of Aldermen for annual operating budget approval and appropriation." Joint Stipulation of Facts, dated August 5, 1994, ¶ 6.[2] The Board of Aldermen is a legislative body, and its "duties and responsibilities include the approval of annual operating budgets proposed by the City's individual departments that have been submitted to the Board of Finance and recommended to the Board of Aldermen by the Board of Finance. Stipulation, ¶ 7. The Capital Projects Committee, an official committee of the City, reviews the capital projects budget requests submitted by the City's departments that choose to make such submissions, "and makes recommendations regarding such submissions to the Board of Finance for the City's Capital Improvements Program that contains program projections for a six year time period." Stipulation, ¶ 8.
On March 16, 1988, the Board of Education submitted its approved capital project budget request and project descriptions for fiscal year 1988-89 to the Controller for submission to the Capital Projects Committee. Stipulation, ¶ 14. In addition, the Board of Education submitted its six-year capital improvement program estimates for fiscal years 1988-89 to 1993-94. Stipulation, ¶ 14. The Board of Education's total capital budget request for fiscal year 1988-89 was $17,260,107. Stipulation, ¶ 14. The capital project requests at issue involved school system furniture and equipment, roof replacement, rolling stock, and paving and fencing. Stipulation, ¶¶ 15-18.[3]
In March and April of 1988, the Board of Education met twice with the Capital Projects Committee to discuss the Board's capital project budget proposal. Stipulation, ¶ 19. The Capital Projects Committee convened on April 8 and April 13 of 1988, amended the Board of Education's original capital budget requests in various ways, and approved "an amended capital budget request." Stipulation, ¶ 20. On May 12, 1988, the Board of Finance approved the City's capital projects budget for the Department of Education, as amended, and for all other departments, and the Mayor presented the capital projects budget, including the amended Department of Education's capital projects budget, to the Board of Aldermen for approval and for municipal bond authorization for funding. CT Page 12404 Stipulation, ¶ 21.
The Board of Aldermen subsequently approved the City's capital projects budget, including the Department of Education's capital projects budget, as amended. Stipulation, ¶ 22. The total approved capital projects budget for fiscal year 1988-89 for the Board of Education was reduced from $17,260,107 to $12,025,000. Stipulation, ¶ 22.
As stated previously, the Board of Education's proposed capital budget requests had been amended in various ways. Its request for furniture replacement had been amended by revising the project description, deleting any expenditures for central office furniture, and by reducing the proposed capital project appropriation, Stipulation, ¶ 23. The Board's roof replacement request was also amended. The amendment approved budget items for roofing of certain schools, omitted reference to any other schools with anticipated roof repair needs that had been included in the Board's proposal, and it included an additional appropriation that had not been included in the original proposal. Stipulation, ¶ 24. In addition, the Board's capital project request for rolling stock was amended to authorize the purchase of a sidewalk sweeper in 1988-89, and its proposed capital project appropriation for rolling stock was reduced. Stipulation, ¶ 25. Finally, the Board's request for paving and fencing was amended by deleting the budget item for "other fencing and resurfacing of parking lots[,]" and by reducing the proposed capital project appropriation. Stipulation, ¶¶ 25, 26.
In August of 1988, in an attempt to purchase new office furniture for its central office facility, the Board of Education submitted a request to the Controller for payment from the capital budget account for furniture replacement. Stipulation, ¶ 27. The Controller refused to process the Board of Education's request on the basis that the "approved capital project description for furniture replacement did not authorize such an expenditure in that central office furniture was not contained in the project description approved and adopted by the Board of Aldermen." Stipulation, ¶ 27. During the same period, the Board of Education attempted to purchase a passenger automobile for the Superintendent's use and submitted a request to the Controller for payment from the capital budget account for rolling stock. Stipulation ¶ 28. The Controller refused the request because the approved capital project description for rolling stock "did not authorize the purchase in that the automobile was not contained in the project description approved and adopted by the Board of CT Page 12405 Aldermen." Stipulation, ¶ 28. In November of 1988, the Board submitted invoices for an architectural contract for roof work done at two schools, and sought payment from the capital budget account for roof replacement. Stipulation, ¶ 29. The Controller refused because "these particular schools were not identified in the capital project description for roofing services approved and adopted by the Board of Aldermen for the Fiscal Year 1988-89." Stipulation, ¶ 29. In addition, during this period, "the Board submitted to the Controller for payment an encumbrance for the paving of a parking lot" at one of the schools, and it sought payment from the capital budget account for paving and fencing. Stipulation, ¶ 30. The Controller refused to process the request "on the basis that the parking lot was not within the capital project description for paving and fencing approved and adopted by the Board of Aldermen." Stipulation, ¶ 30.
The parties have filed the following in support of their respective positions. The Board of Education filed a memorandum of law on April 4, 1994. The Board of Aldermen filed a memorandum on August 10, 1994, and the City and the individual defendants filed a joint brief on August 10, 1994. Subsequently, the Board of Education submitted a reply to defendants' memoranda of law, dated September 9, 1994. In addition, the City and the individual defendants submitted a document, dated September 13, 1994, entitled "LEGISLATIVE HISTORY TO 1978 AMENDMENT TO CONNECTICUT GENERAL STATUTE, SECTION 10-240."
On September 14, 1994, the court, Booth, J., conducted a hearing on this matter.
STANDARD
"An action for declaratory judgment is a special proceeding . . . ." (Internal quotation marks omitted.) Wilson v. Kelley,224 Conn. 110, 121, 617 A.2d 433 (1992). "The purpose of a declaratory judgment action, as authorized by General Statutes § 52-29 and Practice Book § 390, is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties." (Emphasis in original; internal quotation marks omitted.) Id., 115.
General Statutes § 52-29 (a) provides: "The superior court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the CT Page 12406 force of a final judgment."
"In an action seeking a declaratory judgment, the sole function of the trial court is to ascertain the rights of the parties under existing law." Middlebury v. Steinmann, 189 Conn. 710,715, 458 A.2d 393 (1983).
ARGUMENTS
Generally, the Board of Education argues that the defendants had no authority to unilaterally alter the Board of Education's itemized capital budget by adding or deleting certain capital projects from the budget request prior to its approval or appropriation. The Board of Education observes that General Statutes § 10-222 requires it to submit an itemized estimate of the proposed cost of maintaining the public schools for the ensuing year to the municipality, but that post-submission, the "municipality's ability to manipulate the manner in which the board proposes to spend its appropriation for school purposes is extremely limited." Board of Education's Memorandum, dated April 4, 1994, p. 6. It maintains that the scrutiny of the municipality is limited "to determining whether these items fall within the two categories that a municipality is prohibited from wholly eliminating in the approved budget: educational expenditures required for the board to meet its statutory obligations or educational expenditures over which the board is entitled, by statute, to exercise its own independent discretion." Memorandum, P. 7.
In addition, the Board of Education argues that the City Charter underscores the defendants' limited authority to scrutinize the Board's individual, itemized budget requests by providing that "`[t]he action of the board of finance and the board of aldermen on the requests of the board [of education] shall relate to theirtotal only; and if the board shall receive an appropriation greater or less than its original request, it shall forthwith revise its detailed estimate of its expenditures in accordance therewith.' 1980 Charter Section 177 (emphasis added.)" Memorandum, p. 8. The Board emphasizes that the itemized expenditures at issue were "mandated by statute in that they directly related to the Board's duty to maintain and operate the buildings, land and other property used for school purposes." Memorandum, p. 9-10. Accordingly, it concludes that the defendants' authority to manipulate the Board's budget was limited to reducing the total amount of appropriations for capital expenditures in the categories at issue in the event CT Page 12407 that such expenditures were not reasonably necessary to achieve the Board's statutory obligations. Memorandum, p. 10.
The Board of Education also argues that "the defendants were further prohibited from conditioning capital appropriations upon the Board's compliance with an amended list of projects upon which the appropriations could be spent." Memorandum, pp. 11-12. It contends that "[b]ecause the municipality's control over the board's budget is limited to adjusting the total appropriation, the municipality has no authority to restrict the board to spending the appropriated funds on any particular project." (Emphasis in original.) Memorandum, p. 12. It concludes that "the defendants exceeded their authority by restricting the Board's ability to spend already appropriated funds on school related expenditures, a power that is within the Board's clear discretion pursuant to Conn. Gen. Stat 10-222." Memorandum, p. 17.
Initially, the Board of Aldermen maintains that, with respect to the capital projects budget, the Board of Education functions as an agent of the school district and not as an agent of the state. Therefore, it contends that the Board of Education is subject to the Charter and city ordinances, just as any other city department or agency. Board of Aldermen Memorandum, dated August 10, 1994, pp. 6-8. It maintains that the municipality's annual operating budget and capital projects budget are separate and distinct budgets and budgetary processes, and that the statutory discretion conferred on the Board of Education is limited solely to the annual operating budget appropriation. Memorandum, pp. 8-12. In addition, the Board of Aldermen argues that the City Charter, and supporting ordinances, authorizes it to amend the Board of Education's capital project requests and accompanying project descriptions. Memorandum, pp. 13-16. Finally, the Board of Aldermen contends that, as the legislative body, it has the sole authority to determine the purposes for which bond proceeds may be used, and that the Board of Education has no authority to alter such purposes. Memorandum, pp. 16-18.
The City, and the individual defendants, argue that a local board of education acts as an agent of a municipality, subject to local charter and ordinances, concerning the construction, acquisition ownership, disposition or repair of school lands or buildings or major school equipment. City's Memorandum, dated August 10, 1994, pp. 6-11. These defendants observe that most capital projects involve multi-year financial undertakings; therefore, the Board of Education's capital projects budget is CT Page 12408 subject to local control. Memorandum, pp. 12-17. They emphasize that the discretion afforded a local board of education by General Statutes § 10-222 applies only to such board's annual operating budget, and that the statute does not expressly authorize a board of education to enter into a multi-year contract without local governmental approval. Memorandum, pp. 17-18. In addition, these defendants note that the Board of Education's "substantial discretion" only applies to the "ultimate purposes" for which the Board chooses to spend funds already appropriated. Memorandum, p. 19. These defendants further maintain that the Board of Education is governed by the relevant provisions of the Charter and ordinances that concern funding for capital projects. Memorandum, p. 26.
In its reply memorandum, the Board of Education contends that the applicable statutes only confer financing authority upon a municipality to fund public education within its district, but that the statutes do not vest specific authority in the municipality with respect to spending appropriations for capital projects. Reply Memorandum, dated September 9, 1994, pp. 6-16. In addition, the Board of Education argues that the statutes do not create a distinction between a local school board's discretion to expend funds for capital projects and its discretion to spend funds appropriated for educational purposes. Reply Memorandum, pp. 16-20. The Board of Education further maintains that "general canons of statutory construction directly contradict the defendants' interpretation" of General Statutes § 10-220 and 10-240. Reply Memorandum, p. 20. Finally, the Board of Education rejects, as misleading, the defendants' argument that the appropriated funds in this case, raised through a general bond issue, cannot now be redesignated. Reply Memorandum, p. 29.
DISCUSSION
As previously stated, the Board of Education first seeks a determination as to "whether the Board of Aldermen and the Capital Projects Committee has the power and authority under the General Statutes or the Charter of the City of New Haven to unilaterally alter the estimates of cost, line item and explanatory narrative of the budget of the Board of Education . . . and in the event that the Board of Aldermen and the Capital Projects Committee be found to have such power, under what circumstances it may be exercised." Amended Revised Complaint.
The court finds that the Board of Aldermen and the Capital CT Page 12409 Projects Committee have authority under the General Statutes and the Charter to alter cost estimates, line items and the explanatory narrative of the Board of Education's capital projects budget. The court finds that (1) such power is consistent with a town's authority, derived from General Statutes § 10-240, to control schools through its board of education; (2) that such authority is consistent with the general powers of a school district, derived from General Statutes § 10-241, "to build, equip, purchase, and rent schoolhouses and make major repairs thereto and to supply them with fuel, furniture and other appendages and accommodations . . ."; and, (3) that such authority is not inconsistent with the specific discretionary power of the Board of Education, derived from General Statutes § 10-222, to expend post-appropriated funds within an ensuing year.
"A town board of education is an agency of the state in charge of education in the town, and broad powers are granted it by the legislature to that end. In the exercise of those powers or in the incurring of expense necessitated thereby to be paid by the town, the board of education is beyond control by the town or any of its officers except as limitations are found in statutory provisions." (Internal quotation marks omitted.) Board of Education v.Ellington, 151 Conn. 1, 6, 193 A.2d 466 (1963). "Local boards of education are also agents of the municipality that they serve, however. This court has recognized that [t]he state, in the exercise of its policy to maintain good public schools, has delegated important duties in that field to the towns. . . ." (Citations omitted; internal quotation marks omitted.) Cheshire v.McKenney, 182 Conn. 253, 258, 438 A.2d 88 (1980).
"General Statutes § 10-240 provides, in part: `Each town shall through its board of education maintain the control of all the public schools within its limits.' (Emphasis added.) Local boards of education act on behalf of the municipality, then, in their function of maintaining control over the public schools within the municipality's limits. See also General Statutes § 10-220."Cheshire v. McKenney, supra, 182 Conn. 258-59. "Moreover, we have only recently reiterated that the powers of local boards of education are not defined only by state statute, and that a local charter may limit the powers of the local board of education where the provisions are not inconsistent with or inimical to the efficient and proper operation of the educational system otherwise entrusted by state law to the local boards." (Internal quotation marks omitted.) Id., 259. CT Page 12410
The Board of Education argues that in 1978 "significant language" was added to General Statutes § 10-240 which "should be construed as further legislative intent to limit the municipality's responsibility to providing financing, under Conn. Gen. Stat. §10-240 and § 10-241, and not to providing a grant of independent authority over expenditures that are capital in nature, under Conn. Gen. Stat. § 10-240." Reply Memorandum, dated September 9, 1994, pp. 12-13.[4]
The phrase, "though its board of education" was added to General Statutes § 10-240 by Public Acts 1978, No. 78-218, § 175. The legislative history, however, reveals that the changes engendered by Public Acts 78-218 were not intended as substantive changes, but were only technical in nature.
The Report of the Connecticut Commission to Revise and Recodify the Education Laws discloses that the Commission began its task by developing a statement of objectives, and it outlined five tasks it planned to accomplish. Report of Connecticut Commission to Revise and Recodify the Education Laws, March, 1978. The Commission intended to reorganize Title 10 of the General Statutes, review the statutes to make technical revisions, and to keep a record of suggested substantive changes for consideration by the Education Committee of the General Assembly, or by another commission. The Commission also planned a more comprehensive system of cross references within the statutes. It further hoped to make "substantive revisions in one chapter of Title 10, if time allowed." Commission Report, p. 1. The Commission completed four of its tasks, but it lacked the time to undertake the "substantive revision[s]." Id.
In its recommendations for substantive changes, however, the Commission did address the issue of local governance. The members of the Commission "expressed concern over the relationship between Sec. 10-241 (Powers of school districts) and Sec. 10-220 (Duties of boards of education). The relationship between the school district and the board of education is not delineated ill the statutes. It was felt that either these sections should be rewritten or another section added to clarify the relationship. " Commission Report, p. 3. On March 27, 1978, a hearing was conducted before the Education Committee concerning "Bill 5999, an Act concerning Technical Revisions of the Education Statutes." Education Committee Hearing, Pt. 2, 1978 Sess., pp. 537-40. At this proceeding, Hollace Brooks, the director "of the Committee to recodify the state education statutes[,]" explained that "[t]his CT Page 12411 Bill contains the technical revisions recommended by the Commission to Revise and Recodify the Education Laws." Id., p. 537. Brooks was asked by Senator Schneller, the Chairman of the Education Committee, whether there were "any changes that have been made in this, in all of this recodification that is any way substantive or that can be possibly construed as substantive, or is it all purely technical?" Id., 539. Brooks replied that "[w]e made a concerted effort to limit the changes to technical changes. There are no changes in here that I could identify as substantive. We made an effort to avoid substantive changes." Id.[5]
On April 19, 1978, "An Act Concerning Technical Revisions of the Education Statutes" was considered, and passed, by the House of Representatives. At that time, Representative Glassman stated that "the purpose of the bill is to clean up the statutes without making any substantive changes." 21 H.R. Proc., Pt. 6, 1978 Sess., p. 2549. Representative Osler further commented that "Mr. Speaker, this is truly a technical bill. It was very difficult to keep it that way because the committee that was appointed with some legislative and some public members really had a number of things they would have liked to clear up and some language that they would have liked to revise but always in revising language very much there is a possibility that one inadvertently changes it." Id., 2550.
Subsequently, when the Act came before the Senate, Senator Reimers emphasized that the bill was "the result of a year's study by a special commission which was empowered to recodify and revise the education statutes. The commission found it impossible to in fact revise and so they have just recodified. In other words, this is entirely a technical Bill." 21 S. Proc. Pt. 7, 1978 Sess. p. 2499. Senator Reimers observed that
 [t]he effort was made to remove sexist language, to remove obsolete parts of the statute and to make some kind of coherent and consistent use of the term local and regional board of education where, if you go into this Bill in any detail, you see that the old terminology is still there; such as school district. It is there for a reason because we have developed a peculiar relationship between the towns and the school districts which involves the fiscal authority of both. In some cases to have changed the words to be consistent might have changed that delicate balance of fiscal authority. Therefore, we left it the way it was. The House Amendment picks up some errors, most of which were typographical and one or two CT Page 12412 places where there was a question about that matter of fiscal authority and where we went back to the old language. I would urge the adoption of the Bill."
Id., 2499-2500.
This legislative history makes it clear that the addition of the phrase "through its board of education" in 1978 added nothing to the authority of boards of education in fiscal matters beyond what they possessed prior to 1978.
In addition, in Board of Education v. State EmployeesRetirement Commission, 210 Conn. 531, 542-43, 556 A.2d 572 (1989), the court emphasized that each town, not each board of education, is a school district by virtue of the language contained in General Statutes § 10-240. In that case, the dispute centered upon the interpretations accorded "General Statutes § 7-452(1), which defines a `municipality' for purposes of participation in the social security system, and General Statutes § 7-454(2), which provides a qualified exemption from social security coverage and taxation for teachers." Id., 541. Plaintiffs, three local boards of education, had claimed "that the trial court erred in failing to conclude that they are each an independent `municipality' within the meaning of General Statutes § 7-452(1) and therefore not subject to the social security tax since they, as `municipalities' never agreed to participate in the system pursuant to General Statutes §§ 7-453 and 7-457." Id., 541. General Statutes §7-452(1) provided that, for purposes of participation in the social security system, a "municipality" shall include, among other entities, a "school district." Id. The plaintiffs argued, in part, that they qualified as municipalities under General Statutes § 7-452(1) because a board of education was the equivalent of a school district, which was "included in the definitional language of the statute." Id., 542. The plaintiffs cited § 10-240 in support of their position "that the legislature intended to equate boards of education with school districts." Id., 542.
The court emphasized that "[c]learly, § 10-240 provides that `[e]ach town . . . shall be a school district,' (emphasis added) and that each town's board of education is merely the instrumentality through which the town `maintain[s] the control of all the public schools within its limits.' The plain language of the statute provides that each town, not each board of education, is a school district for the purposes recited therein." Id., 542-43. The court refused to "torture the words or sentence structure CT Page 12413 of a statute to import an ambiguity where the ordinary meaning of the language leaves no room for it. . . . Thus, we conclude that a board of education is not a school district, and, accordingly, the plaintiffs do not fall within the definition of `municipality' set forth in 7-452 (1)." (Citation omitted.) Id., 542-43.
The general powers of a school district are enumerated in General Statutes § 10-241. This statute provides, in pertinent part, that: "Each school district shall be a body corporate and shall have power . . . to build, equip, purchase and rent schoolhouses and make major repairs thereto and to supply them with fuel, furniture and other appendages and accommodations . . . to lay taxes and to borrow money for the purposes herein set forth . . . ." General Statutes 10-241. In addition, General Statutes § 10-220 further "delegates the duty to provide and administer public education to local and regional boards of education." NewHaven v. State Board of Education, 228 Conn. 699, 703-04,638 A.2d 589 (1994).
General Statutes § 10-220 provides, in part, that: "Each local or regional board of education shall maintain good public elementary and secondary schools, implement the educational interests of the state as defined in section 10-4a and provide such other educational activities as in its judgment will best serve the interests of the school district . . . shall have charge of the schools of its respective school district . . . [and] shall have the care, maintenance and operation of buildings, lands, apparatus and other property used for school purposes. . . ." General Statutes § 10-220(a).
The general powers and duties enumerated in General Statutes §§ 10-241 and 10-220 are implemented through the specific appropriation and budgetary mechanism outlined in §§ 10-222.
"In the absence of special charter provisions, the power of any municipality to control the budget of its board of education is derived from General Statutes § 10-222." Board of Education v.Ellington, supra, 151 Conn. 6-7. This statute sets forth certain requirements with respect to a budget of a board of education, and it provides, in relevant part, that:
 Each local board of education shall prepare an itemized estimate of the cost of maintenance of public schools for the ensuing year and shall submit such estimate to the board of finance in each town or city having a board of finance, to the board of selectmen CT Page 12414 in each town having no board of finance or otherwise to the authority making appropriations for the school district, not later than two months preceding the annual meeting at which appropriations are to be made. The money appropriated by any municipality for the maintenance of public schools shall be expended by and in the discretion of the board of education. Any such board may transfer any unexpended or uncontracted-for portion of any appropriation for school purposes to any other item of such itemized estimate. Expenditures by the board of education shall not exceed the appropriation made by the municipality, with such money as may be received from other sources for school purposes."
General Statutes § 10-222 (a).
In the present case, the court holds that the discretion of the board of education is limited to the preparation and submission of an itemized estimate of public school maintenance for an "ensuing year," and the expenditure of such appropriated funds, and the ability to "transfer any unexpended or uncontracted-for portion of any appropriation for school purposes to any other item of such itemized estimate."
Although the Board of Aldermen and the Capital Projects Committee do not possess line-item control with respect to the Board of Education's annual operating or capital budget; see Boardof Education v. Ellington, supra, 151 Conn. 1; they do not lack control over line items in the capital projects budget for years beyond the "ensuing year." The Board of Education's discretion is limited to expenditures for an "ensuing year." Capital projects, however, involve multi-year expenditures that go beyond the "ensuing year."
Provisions relating to capital budget matters, including the creation and membership of the Capital Projects Committee, are contained in Article XVI of the Charter of the City of New Haven 1980, as amended (hereinafter "1980 Charter").[6]
The New Haven Charter defines a capital project as "any physical public betterment or improvement or any preliminary studies and surveys relative thereto; the acquisition of property of a permanent nature; and equipment for any public betterment or improvement when first erected or acquired; major alterations and repairs to existing buildings or structures; and major pieces of equipment." 1980 Charter, Art. XVI, § 78. With respect to the CT Page 12415 capital projects budget, the Charter provides that "[t]he capital budget shall state the proposed expenditures for capital projects and the respective amounts proposed to be raised therefor in the annual operating budget and the amounts, if any, proposed to be raised from the issuance of bonds, from special assessments, or from other sources." Id. The Capital Projects Committee "shall prepare and submit to the mayor and the board of finance a program of capital projects which programs shall be based on estimates of the costs of such projects as submitted by each department, office or agency annually in the same manner as estimates of other budgetary requirements are prepared. The mayor may submit such capital budget to the board of aldermen." 1980 Charter, Art. XVI, § 79.
Section 2-25 of the Ordinance of the City of New Haven, which incorporates Article XVI of the Charter by reference, further delineates the powers of the Board of Aldermen with respect to a proposed capital budget, in pertinent part, as follows:
 (1) The board of aldermen shall not add any capital projects to the capital budget submitted by the mayor, except in accordance with the emergency certification procedure enumerated in subsection (f)(4) below.
 (2) The board of aldermen may increase, reduce or eliminate, in its entirety, any capital project included in the proposed capital project budget, provided that the total of all such changes shall not increase the total amount of the capital budget as transmitted pursuant to subsection (e) above.
 (3) The board of aldermen shall be empowered to amend any narratives or supporting language attached to or contained within the proposed capital budget.
New Haven Ordinance, § 2-25(f).[7].
With respect to the Board of Education's request for a determination as to "whether the Board of Aldermen and the Capital Projects Committee has the power and authority under the General Statutes or the Charter of the City of New Haven to unilaterally alter the estimates of cost, line item and explanatory narrative of the budget of the Board of Education . . ." the court finds that the Board of Aldermen and the Capital Projects Committee have the power and authority to alter the estimates of cost, line item and CT Page 12416 explanatory narrative of the Board of Education's capital projects budget. The court notes that in the request for declaratory judgment reference is made to the ability of the Board of Aldermen and the Capital Projects Committee "to unilaterally alter the estimates of cost, line item and explanatory narrative of the budget of the Board of Education. . . ." (Emphasis provided.) Amended Revised Complaint. To the extent that the word "unilaterally" might reasonably imply authority in the Board of Aldermen or Capital Projects Committee to adopt a capital budget for the Board of Education without reasonable and good faith consultation with the Board of Education, the court rejects the word "unilaterally" in the question.
In addition, the Board of Education seeks a determination as to "whether or not the Board of Aldermen and the Capital Projects Committee have the power and authority to direct the manner in which funds appropriated to the Department of Education may be expended except as to the total appropriation in any Capital Project classification." Amended Revised Complaint.
The court finds that the Board of Aldermen and the Capital Projects Committee do not have the power and authority to direct the manner in which funds annually-appropriated to the Department of Education, whether for operating expenses or capital projects costs, may be expended. The court finds that the Board of Aldermen and the Capital Projects Committee only have the power and authority to recommend the manner in which funds appropriated to the Department of Education are expended to the extent that they have the pre-appropriation authority to alter estimates of cost, line items and project descriptions.
The court finds that the capital budget procedures of New Haven's Charter provisions and General Statutes § 10-222 are not inconsistent because the capital project provisions are merely an aid in budgetary planning and do not regulate the use of funds appropriated for an "ensuing year" in any manner that would be inconsistent with General Statutes § 10-222.
The Board of Education also requests a determination as to "[w]hether or not the Board of Aldermen and the Capital Projects Committee have the power to alter specific items of the budget prepared and adopted by the Board of Education or to direct the method by which the amount appropriated shall be expended either directly or by implication or by implementation of capital budget procedures imposed on the Department of Education which CT Page 12417 circumscribe said Board's statutory and charter powers to have entire charge, control and management of all the public schools in the City of New Haven and of the expenditure of all monies appropriated for the support and maintenance of the same." Amended Revised Complaint.
The court finds that the Board of Aldermen and the Capital Projects Committee have the power to alter specific items of the capital projects budget prepared and adopted by the Board of Education. The court further finds that the Board of Aldermen and the Capital Projects Committee do not have the power to direct the method by which the amount annually appropriated, for whatever purposes, shall be expended either directly or by implication or by implementation of capital budget procedures imposed on the Department of Education.
In declaring its judgment, the court has examined statutory, charter and ordinance provisions dealing with the relationship between a Board of Education and municipal financing responsibility, in particular, the court has extensively examined General Statutes §§ 10-220, 10-222, 10-240 and 10-241, and the relevant charter provisions. The court notes that the Board of Education has stated that: "[i]ndeed, the Board of Education does not dispute that public improvement bonds issued by the City are to be specific, and that funds received from the issuance of such bonds must be expended for those purposes that are expressly designated." Reply Memorandum, dated September 9, 1994, p. 29. Faced with this concession, the court has concluded that any question relating to restrictions on the use or transfer of bond proceeds are not presently before the court.
The court's answers to each of the three questions submitted for declaratory judgment deals with the authority to use and transfer funds without regard to the source of those funds. Nothing in the foregoing decision is intended to imply any opinion by the court with regard to any limitation on the use of funds growing out of bonding authority or bond resolutions.
In conclusion, and as more fully set forth above, the court declares its judgment that:
1. The Board of Aldermen and the Capital Projects Committee have the power and authority under the General Statutes or the Charter of the City of New Haven to alter the estimates of cost, CT Page 12418 line item and explanatory narrative of the budget of the Board of Education as adopted by said Board of Education in accordance with its judgment and discretion as to the proper method of maintaining the school buildings, equipment and property of the City of New Haven and the amounts to be paid therefor. The Board of Aldermen and the Capital Projects Committee have this power to review the capital projects budget after due consultation with the Board of Education. They may not use this power to control in any manner money which has been appropriated to the Board of Education for the ensuing year, whether for operating costs or whether for capital projects costs.
2. The Board of Aldermen and the Capital Projects Committee do not have the power and authority to direct the manner in which funds appropriated to the Department of Education for the ensuing year may be expended except as to the total appropriation in any Capital Project classification.
3. The Board of Aldermen and the Capital Projects Committee have the power to alter specific items of the capital projects budget prepared and adopted by the Board of Education. They do not have the power to direct the method by which the amount appropriated, whether for capital or operating purposes, for the ensuing year shall be expended either directly or by implication or by implementation of capital budget procedures imposed on the Department of Education.